Illinois Power Company, Plaintiff-Appellee, v. Vetrice E. Miller, et al., Defendants-Appellants.

Gen. No. 10,056.

Third District.

September 10, 1956.

Released for publication September 26, 1956.

Hutton, Clark and Hutton, of Danville, for defendants-appellants.

Acton, Baldwin, Bookwalter and Meyer, of Danville, and Fred P. Schuman, of Granite City, for plaintiff-appellee.

PRESIDING JUSTICE REYNOLDS delivered the opinion of the court.

This case arises out of the construction, operation and maintenance of a 138 KV. electric transmission line by the Illinois Power Company, in Vermilion County and Champaign County. The Illinois Commerce Commission authorized the construction of the line and the power company began the acquisition of the right-of-way for the line, either by consent easements or by condemnation. The power company did not seek title to the land needed, but only a perpetual easement over a strip of land 50 feet in width, with the right of access for maintenance and operation. For condemnation purposes and possibly for identification, the tracts were numbered. Only three tracts are involved on appeal, namely Tracts Nos. 10, 11 and 14. Tract No. 13 was involved in the trial in the Circuit Court, but is not involved in this appeal.

The power company secured an easement for Tract No. 10, but was unable to secure easements from the owners of Tracts Nos. 11 and 14, and condemnation proceedings were instituted in the Circuit Court of Vermilion County against Vetrice E. Miller, and James Miller, as owners of Tract No. 11, and against the Equitable Life Assurance Company, as mortgagee;

against Mary Illk, Glenn Illk and Gladys Illk, as owners of Tract No. 14. The condemnation suit proceeded to trial and condemnation was ordered and the jury awarded compensation to Vetrice and James E. Miller as to Tract No. 11 and to Glenn Illk, Mary Illk and Gladys Illk, as to Tract No. 14 for land occupied by the poles of the power company, use of the right-of-way strip, and for damages to the lands of said owners. The jury awarded compensation to Vetrice Miller and James E. Miller in the amount of $1,751.01 and the sum of $648.91 to Mary, Gladys and Glenn Illk. The amount of the judgment was paid by the power company to the County Treasurer and the money was in turn paid by the Treasurer to the Millers and the Illks.

Later, when the power company began the construction of its transmission line, Wendell Miller, claiming to be a tenant on Tracts Nos. 10 and 11, and Harold Long, claiming to be a tenant on Tract No. 14, refused it permission to erect the line.

The power company then instituted the present suit, which prayed for a declaratory judgment and injunction against Vetrice E. Miller, James E. Miller, Wendell Miller, Howard Richter, Glenn Illk, Gladys Illk, Mary Illk, Frank Hayes, Harold Long, Percy E. Stephens, Ruth Stephens, and D. E. Hager. In the alternative the power company prayed condemnation under the Eminent Domain Law and judgment against the tenant defendants, and for judgment over against the owner defendants, for the amount of any award returned by a jury in favor of the tenant defendants. The court overruled motions to strike and dismiss the complaint and upon trial without a jury rendered a declaratory judgment and decree in favor of the plaintiff against all defendants for the declaratory relief prayed. Seven of the defendants, namely Vetrice E. Miller, James E. Miller, Wendell Miller, Harold Long, Glenn Illk, Gladys Illk and Mary Illk have prayed an appeal to this court.

For the purposes of this appeal it is not necessary to discuss any matters concerning those defendants who did not appeal, namely Howard Richter, Frank Hayes, Percy E. Stephens, Ruth Stephens and D. E. Hager.

In reciting the facts as they appeared in evidence, it is best to discuss each tract separately.

### Tract No. 10.

This tract was owned by Willis E. Penfield and Marshall G. Penfield and was managed by the Second National Bank of Danville, Illinois. The land was an 80 acre tract, and no one resided on it. Elmer Smith, farm manager for the Second National Bank of Danville, testified that he managed the Penfield land; that he leased the land to J. E. Miller by written lease in 1949 for a term from March 1, 1949 to February 28, 1950; that after the expiration of that lease, J. E. Miller, who is the same James E. Miller, who resides on and is part owner of Tract No. 11, continued on as a tenant on a year to year basis until January 5, 1955, when another written lease was entered into between Smith, as manager, and James E. Miller as tenant, this second lease to run from March 1, 1955 to February 28, 1956. Wendell Miller, son of James E. Miller and Vetrice E. Miller, also claimed to be a tenant on the Penfield land, but there was no testimony as to a lease between Wendell Miller and the bank. It was Wendell Miller who refused permission to the power company to erect the line across the Penfield land. If Wendell Miller had any lease or was a tenant on the Penfield land it was as a sub-lessee of his father and was oral.

### Tract No. 11.

This tract was owned by Vetrice E. Miller and James E. Miller as owners of record. There was a mortgage to The Equitable Life Assurance Society of the United

300

States. This tract was a compact farm of 320 acres. Wendell Miller lived on the farm, and claimed to be a tenant but there was no written lease agreement between himself and his parents.

## Tract No. 14.

This tract was a 96 acre farm which was part of a larger, compact farm of 268 acres. It was owned by Mary Illk, Glenn Illk and Gladys Illk, as owners of record. No one lived on the 96 acre tract, but Harold Long claimed he had a written lease to farm the land for three years, the lease expiring March 1956.

None of the leases were a matter of record, and the power company in the original condemnation proceeding proceeded only against the owners of record.

The appellants raise five points on appeal. One, that the Declaratory Judgment Act does not apply to a cause of this nature. Second, that the declaratory judgment of the trial court was erroneous. Third, that the finding of fact by the court as to the interest of defendant Wendell Miller as to Tract No. 11 was unsupported by any evidence. Four, that the finding of fact by the court as to the interest of defendant James E. Miller as to Tract No. 10 is contrary to law and the evidence. Five, that the complaint was multifarious.

█ The first point raised by the appellants is that a declaratory judgment action is not the proper proceeding to determine questions of construction or validity of a judgment rendered in another suit, nor to elucidate or declare rights or legal relations of plaintiff and persons thereunder who were not parties to such prior judgment. In support of this position the appellants cite a number of decisions of other jurisdictions, but only one from Illinois. The one cited from Illinois, Burgard v. Mascoutah Lumber Co., 6 Ill.App.2d 210, referring to decisions from other states said this: "Since this statute was enacted in 1945,

301

not many cases thereunder have reached our courts of review. However, this statute is quite similar to those of Kansas and Kentucky, and other States, which have been in effect much longer, therefore we refer to precedents from other jurisdictions." Because the Illinois statute is an adaption of the declaratory judgment law of a number of States, it is almost necessary that reference be made to the decisions of other jurisdictions to determine the intent of our own lawmakers. The Illinois statute is essentially the form of the Michigan declaratory judgment statute, with adaptions taken from English Order XXV, Rule 5, and the Uniform Declaratory Judgment Act (9 Uniform Laws Annotated). The Michigan act was patterned after the Kansas statute, and the provisions of the Illinois act bear striking resemblance to the Kentucky statute. But, the cases cited by the appellants do not bear out their contention as to the instant case. It is true that the case Heller v. Shapiro (Wis.), 242 N. W. 174, 175, held that the Wisconsin act was not intended to elucidate, modify or declare rights under an existing decree. In the case of Ladner v. Siegel (Pa.), 144 Atl. 274, 276 that court held that the Declaratory Judgment Act of Pennsylvania was not designed to secure interpretation of judicial decrees already entered. And in the case of Back's Guardian v. Bardo (Ky.), 27 S.W.2d 960, 963, that court held that the Declaratory Judgment Act could not entertain a suit to determine whether a former judgment or the proceeding leading to the former judgment were legal and proper. In other words, as this court interprets those decisions, those courts held that a court acting under the declaratory judgment law could not interpret, define, elucidate, or declare rights under a former judgment or decree. Insofar as any part of the decision in this case attempts to define, interpret, enforce or declare rights under the condemnation suit between the Illinois Power Company

302

and the owners of record, namely Vetrice E. Miller, James E. Miller, as owner of Tract No. 11, Glenn Illk, Gladys Illk and Mary Illk, we must hold it improper under the Declaratory Judgment Act. Those rights were determined and settled in the original condemnation suit. But does this mean that the court could not determine under the Declaratory Judgment Act, the rights of the Illinois Power Company, and the rights of those claiming as tenants of the lands involved in the original condemnation suit? To properly pass upon that point, we must look to the words of the Illinois act itself. 181.1 (Civil Practice Act Section 57½) Declaratory Judgments. Chapter 110, Illinois Revised Statutes 1953, says:

"(1) No action or proceeding in any court of record shall be open to objection on the ground that a merely declaratory judgment, decree or order is sought thereby, and the court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination at the instance of anyone interested in the controversy, of the construction of any statute, municipal ordinance, or other governmental regulation, or of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested, but the foregoing enumeration shall not exclude other cases of actual controversy."

■ From a reading of the statute it is clear that there must be an actual controversy. Certainly in this case there is an actual controversy between the persons claiming as tenants and the power company. There is an actual controversy as to whether or not they were entitled to damages, whether or not the construction of the power transmission line would invade their rights, and whether or not under the Eminent Domain Act, they were entitled to have their day in court. And

referring again to the case of Burgard v. Mascoutah Lumber Co., 6 Ill.App.2d 210, at page 219, that court in considering the general purpose of the statute and viewing the precedents on the subject, said: "If the complaint fails to show a controversy exists, or that the question involved is moot, the suit should be dismissed on motion. But if an actual controversy is disclosed and is adjudicated by the court, whether upon demurrer or motion or otherwise, the suit should not be dismissed; the proper practice is for the court to enter an order declaring the rights of the parties as was done in this case. Obviously, to avoid needless duplication, this rule is especially necessary where factual issues have been litigated and decided.

"There is no technical form prescribed for the declaration of rights; it is sufficient if the rights may be ascertained therefrom in connection with the findings of court or jury in view of the controversy presented. R. G. Hamilton Corp. v. Corum, 218 Cal. 92, 21 P.2d 413." And in the Burgard case the court further defined the purpose of the statute by saying: "The ultimate purpose is to secure a declaration of rights binding upon both parties, regardless of which may prevail."

In the case of Jones v. Hodges, 2 Ill.App.2d 509, at page 515, this court said: "A declaratory judgment was unknown to the common law, is a creature of the statute and the Act providing for such an adjudication is to be liberally construed." But, this court continuing, said: "The provisions of the statute are to be strictly complied with and the prescribed rules of procedure followed." In other words, while the rules of procedure must be strictly adhered to, the act itself providing for declaratory judgments shall be liberally construed. But, this does not mean that the Declaratory Judgment Act was designed to supplant existing remedies, but is an alternative or additional remedy to facilitate administration of justice. Coven Distributing Co., Inc. v. Chicago, 346 Ill. App. 448.

In the light of the few cases which have passed upon this question, and from a reading of the statute itself, this court is constrained to interpret the statute liberally and hold that this case comes within the intent and provisions of the Declaratory Judgment Law of Illinois, and that the Circuit Court had full authority to hear and pass upon the controversial questions involved. As to point 2 of the appeal, we must hold that having authority to hear the cause under the Declaratory Judgment Act carries with it the authority to settle the rights between the parties in this case.

Points Nos. 3 and 4 of the appellants' appeal all involve an interpretation of the Eminent Domain Act, and a decision as to who are necessary parties.

Under the Eminent Domain Act, Chapter 47, Illinois Revised Statutes, Section 2, in part provides: ". . . it shall be lawful for the party authorized to take or damage the property so required, or to construct, operate and maintain any public road, railroad, plankroad, turnpike road, canal or other public work or improvement, to apply to the circuit or county court of the county where the said property or any part thereof is situated, or to the judge thereof in vacation by filing with the clerk a petition, setting forth, by reference, his or their authority in the premises, the purpose for which said property is sought to be taken or damaged, a description of the property, the names of all persons interested therein as owners or otherwise, as appearing of record, if known, or if not known stating that fact and praying such court or judge to cause the compensation to be paid to the owner to be assessed. If the proceedings seek to affect the property of persons under guardianship, the guardians, or conservators of persons having conservators, shall be made parties defendant, and if of married women their husbands shall also be made parties. Persons interested, whose names are unknown, may be made parties defendant

305

by the same descriptions and in the same manner as provided in other civil cases."

Section 11 provides: "Any person not made a party may become such by filing his cross petition, setting forth that he is the owner or has an interest in property, and which will be taken or damaged by the proposed work; and the rights of such last named petitioner shall thereupon be fully considered and determined."

 There can be no question that leasehold interests are property rights that can and will be compensated for in condemnation proceedings. The law in Illinois is well stated in the case of Leonard v. Autocar Sales & Service Co., 392 Ill. 182, at pages 190 and 191, where the court there said: "The right of eminent domain is an inherent attribute of sovereignty. It is defined as the right of the Nation or State, or those to whom the power has been lawfully delegated, to condemn private property for public use, and to appropriate the ownership or possession of such property for such use, upon paying the owner just compensation, to be ascertained according to law. (Sanitary Dist. v. Manasse, 380 Ill. 27.) It extends to every kind of property, including not only that which is tangible, but all rights and interests of any kind. (South Park Com'rs v. Montgomery Ward & Co., 248 Ill. 299). The right of the citizen to own, possess and enjoy his property must necessarily give way to the right of the sovereign to appropriate it to public uses, when, in the judgment of the sovereign power, public interest will be promoted. (Penn. Mutual Life Ins. Co. v. Heiss, 141 Ill. 35.) A lessee, as tenant of an estate for years, takes and holds his term in the same manner as any other owner of real property holds his title, subject to the right of the sovereign to take the whole or any part of it for public use, upon the payment to him of just compensation. (Corrigan v. Chicago, 144 Ill. 537; Stubbings v. Village of Evanston, 136 Ill. 37.) That appellant is entitled to receive from the government full compensation for

so much of its leasehold estate as is appropriated to public use and thereby obtain complete indemnity for its loss is not open to question. (United States v. General Motors Corp., 323 U. S. 373, 65 S. Ct. 357.)"

And it is equally true that the decree or order of condemnation does not bind any proper party to the condemnation, unless due service was had on such party. St. Louis and Cairo R. Co. v. Postal Tel. Co., 173 Ill. 508; South Park Com'rs v. Livingston, 344 Ill. 368. The question arises, whether or not the holder of an unrecorded or oral lease is a proper party. The Eminent Domain statute requires that the petition contain the names of all persons interested therein as owners or otherwise, as appearing of record. In support of their contention that the tenants here were necessary parties, the appellants contend that the case of Hooper v. Finlay, 331 Ill. 132 is not in point; that it does not say that only owners of recorded interests are necessary parties; that it does not say that unrecorded tenants are unnecessary parties, and that it does not say that where there is actual or constructive notice of an unrecorded interest, the owner thereof is an unnecessary party. But the Hooper v. Finlay case, supra, does say this: "The statute in this State, as we have seen, requires that the petition contain the names of all persons interested in the premises 'as owners or otherwise, as appearing of record.'" That was a case where a judgment creditor claimed to be a necessary party in a condemnation proceeding. The court held that the judgment creditor was not a necessary party in the following language: "There was nothing of record to show that she had any interest in the land, and therefore nothing of record to show that her judgment creditor had any such interest. The condemnation proceedings complied with the statute." While the Hooper v. Finlay case does not in so many words say that unrecorded tenants are unnecessary parties, and does not say that only owners of recorded interests

307

are necessary parties, it does say that the statute is complied with when the petition fails to name a judgment creditor who was not a creditor of record. The court does base its opinion on the proposition that there is nothing of record to show an interest. Here there is nothing of record to show any interest of Wendell Miller to Tract 11, nothing of record to show any interest of James E. Miller to Tract 10 and nothing of record to show any interest of Harold Long to Tract 14. But the appellants contend that the power company had knowledge of their tenancies. We cannot agree with this contention. Tract No. 10 was unoccupied. Tract 11 was occupied by James E. Miller and Vetrice E. Miller, record owners. Wendell Miller lived on the tract. Tract No. 14 was not occupied by Harold Long, and the Illks were the record owners. We do not find any holding under the Eminent Domain Law as to what constitutes notice, but the decision of our courts on other matters may shed some light as to what is notice.

In the case of Union Bank of Chicago v. Gallup, 317 Ill. 184, it was said: "Where the record owner of property is in possession and a second party is likewise in possession, the possession of the latter is not notice to purchasers or judgment creditors of rights which he may claim in the premises, but his possession, in order to be such notice, must be exclusive and unequivocal."

 As to Tract No. 11, James E. Miller and Vetrice E. Miller, record owners were in possession. It is true that Wendell Miller also lived on the property, but there is nothing in the evidence to show any notice to the power company that he claimed any interest, until the power company began to build the transmission line. The same is true as to James E. Miller as to Tract No. 10 and Harold Long as to Tract No. 14. Undoubtedly they were aware that the easement right had been condemned or was being condemned. They had a right to intervene, under the provisions of Section 11

308

of the Eminent Domain Act, but chose to remain silent and do nothing. It must be assumed that the jury awarded full compensation for the rights taken, including crops. If these unrecorded lease holders have any rights, they can be asserted against the persons who received the award. Yellow Cab Co. v. Howard, 243 Ill. App. 263.

 The Illinois statute requires that all persons interested in the premises, as owners or otherwise, as appearing of record, must be made parties defendant in a condemnation proceeding. This would appear to require the plaintiff in such suits to proceed only against persons who appear of record as owners or otherwise. Here the owners of record were named defendants. There is nothing to show notice sufficient to put the plaintiff on notice that these persons claiming as tenants had any interest. There was nothing of record and no notice otherwise. We must therefore hold that James E. Miller as to Tract No. 10, Wendell Miller as to Tract No. 11 and Harold Long as to Tract No. 14 were not necessary parties to the condemnation proceeding, but that they had a right but did not assert that right to intervene, and that any rights to compensation for their leasehold interest must be asserted against the receivers of the awards.

As to the fifth point raised in the appeal, on the ground that the complaint is multifarious, this court can see no merit in that point. While the tracts were different, the points at issue were for the three claiming tenancies practically identical, and could be and were disposed of in a single suit.

For the reasons above stated, the judgment of the Circuit Court was correct and is hereby affirmed.

Affirmed.

CARROLL, J., concurs.

HIBBS, J., took no part in the consideration of this case.