54 Ill. App.2d 337 (1964)
203 N.E.2d 605
The Trustees of Schools of Township Three (3) North of Range Nine (9), West of the Third Principal Meridian, in Madison County, Illinois, To Wit, John Harbig, et al., Plaintiffs-Appellants,
v.
W.J. Steele and Ivy Steele, Trustees, Freida M. Kronsbein, Nee Freida M. Fehling, et al., Defendants-Appellees.
Gen. No. 64-24.
Illinois Appellate Court  Fifth District.
December 15, 1964.
Rehearing denied January 22, 1965.
*338 *339 *340 Maurice Dailey, Niedringhaus & Edison, of Granite City, and Listeman and Bandy, of East St. Louis, for appellants.
Kenneth F. Kelly, of Granite City, and McGlynn & McGlynn (Robert E. McGlynn), of East St. Louis, for Harold William Kronsbein, appellee.
DOVE, P.J.
On November 10, 1960, Harold William Kronsbein filed, in the County Court of Madison County, a petition which sought to vacate two judgment orders previously entered in a condemnation proceeding which originated in that court on August 13, 1953. A hearing upon that petition resulted in an order entered *341 August 2, 1963, which found that the petitioner, Harold William Kronsbein, had a vested interest in the condemned premises at the time the petition to condemn was filed; that the court, in the condemnation proceeding, never acquired jurisdiction of his person, and therefore, the judgments as to him were null and void, and said judgments were vacated and set aside. A motion to vacate this order of August 2, 1963, was filed by the trustees and denied on December 26, 1963, and this appeal by the school trustees followed.
The condemnation petition filed on August 13, 1953, alleged that Henry Fehling, at the time of his death, was seized in fee simple of the property sought to be condemned, and averred his death, and the admission of his will to probate in Madison County, Illinois. It was then alleged that Mrs. Minnie Rode and Fred Lueders were trustees of the premises; that they are both deceased, and that W.J. Steele and Ivy Steele are the duly appointed, qualified and acting trustees of the above-described tract of land, and now hold the same for the benefit, during her lifetime, of Freida M. Kronsbein, nee Freida M. Fehling, defendant herein.
The petition then alleged that Harold William Kronsbein has a certain interest in said real estate under said will, which, by its terms, gave and devised the premises involved in this proceeding, after the death of Freida M. Fehling to her issue, and that Harold William Kronsbein is the son and sole issue of Freida M. Kronsbein. The petition then alleged that Harold William Kronsbein, Frederick Lester Fehling, Amos H. Rode, Esther A. Clemons, Henry E. Lueders, Wesley A. Lueders, and Conrad C. Lueders are all grandchildren of Henry Fehling, and that they have some interest in the described premises in the nature of a contingent remainder. The petition made W.J. Steele, Ivy Steele, Freida M. Kronsbein, Harold William *342 Kronsbein, and the other named grandchildren of Henry Fehling, parties defendant.
Upon the filing of the petition for condemnation on August 13, 1953, the attorney for the petitioners filed an affidavit which recited that the defendant, "Harold William Kronsbein formerly lived and resided with his mother at 2406 Nameoki Road, Granite City, Illinois, but has long since moved from there, and on due inquiry, cannot be found, and his present place of residence is unknown, and that upon diligent inquiry, his place of residence cannot be ascertained." Upon this affidavit a publication notice was published in the Granite City Press Record on August 17, 20, 27, and 31, 1953. A summons was issued out of the office of the County Clerk of Madison County directed to the defendants. As to service on appellee, the Sheriff's return, dated August 18, 1953, is as follows: "I have duly served the said summons on the defendant Harold William Kronsbein, on the 17th day of August, 1953, by leaving a copy of said summons on said date at his usual place of abode with Freida M. Kronsbein, a person of the family of said Harold William Kronsbein, of the age of ten years or upwards, and by informing such person with whom said summons was left of the contents thereof, and by also sending a copy of said summons on the 18th day of August, 1953, in a sealed envelope, with postage fully prepaid, addressed to said defendant, Harold William Kronsbein, 2406 Nameoki Road, Granite City, Illinois, at his usual place of abode. As such Sheriff, I hereby certify that I did, on the 18th day of August 1953, send a copy of said summons in a sealed envelope with postage fully prepaid, addressed to said defendant, Harold William Kronsbein, at his usual place of abode, as stated hereinabove in my return."
[1] On September 23, 1953, J.C. Steele, as attorney for W.J. Steele, Ivy Steele, trustees, Freida M. *343 Kronsbein and Harold William Kronsbein, filed an instrument designated as an answer in said condemnation proceeding. This answer, although improper in this proceeding (Department of Public Works & Buildings v. Lewis, 344 Ill. 253, 255, 176 NE 345), admitted most of the allegations of the petition, and concluded by averring that as trustees under the will of Henry Fehling, these defendants have no right to enter into any agreement for the sale of the premises sought to be condemned.
On November 2, 1953, upon this record an order was entered in this proceeding, which found, among other things, that the court had jurisdiction of all the parties and subject matter of the proceeding; that the described property was not in excess of what was actually needed for school purposes; that the petitioners have complied with all applicable provisions of the statute, and have made the required preliminary proof entitling petitioners to a judgment for the condemnation of the described tract of land. This order directed that the matter of ascertaining the amount of just compensation to be paid the owners be submitted to a jury.
The following day the jury found the premises sought to be condemned contained 35.16 acres, and fixed the amount of compensation to be paid the owners at $58,893. On November 23, 1953, judgment was entered on this verdict, which directed, among other things, that within thirty days from the date of the order, petitioners should pay this amount to the County Treasurer of Madison County for the benefit of the owners of the tract, W.J. Steele and Ivy Steele, trustees under the last will and testament of the late Henry Fehling; that upon such payment, the petitioners should have the right to enter upon the described premises. On December 23, 1953, upon the petition of the said W.J. Steele and Ivy Steele, who represented *344 themselves to be the trustees under the last will and testament of Henry Fehling, deceased, the court entered an order directing the County Treasurer to pay said sum of $58,893 to them as trustees, and thereafter they received this amount and receipted the County Treasurer therefor.
With the record in this condition the defendant, Harold William Kronsbein, filed, on November 10, 1960, his verified motion to vacate the judgment entered on November 23, 1953. This motion made a certified copy of the last will of Henry Fehling a part thereof, and averred that he was the owner of the condemned premises which were held in trust for his mother during her lifetime. He alleged that no service had been had upon him in the condemnation proceeding, either personal or by publication, and that the attorney who filed an answer for him, had no authority to do so, and concluded that the court had no jurisdiction over his person.
To this motion counsel for appellants filed his affidavit denying the several allegations of the motion, and specifically denying that Harold William Kronsbein was not duly represented in said proceeding by Joseph C. Steele, attorney, and denying also that he was not duly served with notice of the pendency of this proceeding by publication according to the statutes of this state then in effect.
Upon the hearing in the trial court, Harold William Kronsbein testified that he was born on September 19, 1917; that he is a grandson of Henry Fehling, deceased, and the son and only child and issue of Freida Fehling Kronsbein; that his father, John Kronsbein, died in October, 1951, and his mother, Freida Fehling Kronsbein, is living and resides at 2412 Madison Avenue, Granite City; that at the time of his father's death, he was married and living in St. Louis, Missouri; that he was subsequently divorced, and in the *345 fall of 1952, he went to Chicago, Illinois, where he was employed in a restaurant and remained there until the summer of 1957, when he went to Los Angeles, and from there came to Granite City in October, 1957; that he never resided at 2406 Nameoki Road, Granite City, Illinois, and he had no knowledge that his mother ever lived there, and he never, at any time prior to the fall of 1957, knew or was advised of the condemnation proceeding; that he knew J.C. Steele, whom he identified as an attorney present at the hearing of his motion; that he did not employ or authorize him to represent him in any legal matters, and had not authorized him to file any answer in the condemnation proceeding for or on his behalf, and never authorized his mother to represent him in any legal matters. He further testified that on October 13, 1960, he discussed the condemnation proceeding with his attorney and then learned, for the first time, that a pleading had been filed on his behalf.
The only other witness who testified upon the hearing of the motion to vacate was Joseph C. Steele. He testified that he lived in Granite City, and had practiced law for many years, knew Harold W. Kronsbein, and had been acquainted with him prior to August, 1953; that on September 21, 1953, he prepared and filed an answer in this cause on behalf of his brother, W.J. Steele and Ivy Steele, trustees under the will of Henry Fehling, deceased, and on behalf of Freida Kronsbein and Harold W. Kronsbein; that Harold W. Kronsbein did not employ him to do so, or employ him to represent him in this proceeding; that he had not seen Harold W. Kronsbein since the fall of 1951, and knew he had left the area at that time. This witness further testified that he knew the affidavits of Mr. Faulkner, the attorney for petitioner in this proceeding, were on file "claiming they hadn't gotten service, and his mother asked me to file this *346 (answer) on behalf of Harold, and that is why I did so."
Counsel for appellant insists that the legal title to the condemned property was, by virtue of the provisions of the will of Henry Fehling, vested in W.J. Steele and Ivy Steele, trustees; that they were made parties and the court acquired jurisdiction over their persons and they represented all the heirs of Henry Fehling mentioned in his will; that Harold William Kronsbein had only a contingent interest in the premises involved and was, therefore, not an indispensable party to the proceeding. It is also insisted that the court acquired jurisdiction of Harold William Kronsbein, and regardless of any other issues, appellee is barred from obtaining any relief because of laches.
To sustain the judgment order appealed from, counsel for appellee insists that Harold William Kronsbein, at the time this petition to condemn was filed, was a necessary and indispensable party thereto, as he had a vested remainder interest in fee in the property sought to be condemned, subject only to the life estate of the trustees for the life of his mother, with the right to possession in appellee at the time of his mother's death; that the court never acquired jurisdiction of his person, and therefore the proceeding, as to him, was void.
The land involved in this proceeding was disposed of under Articles Five, Six, Ten and Eleven of the will of Henry Fehling, which was admitted to probate on September 12, 1910, and a certified copy thereof was attached to the motion filed by appellee on November 10, 1960, to vacate the previous judgment.
These Articles are as follows:

"Article Five: I hereby give, devise and bequeath all the residue and remainder of my estate, real, personal or mixed, whereof I may be *347 seized or possessed, or to which I may in any manner be entitled, or in which I may be interested at the time of my death, unto my executors and trustees hereinafter named, and to their heirs and assigns forever, in trust, nevertheless, as follows:

"Article Six: I direct that my said executors and trustees shall let or lease the said real estate and keep the improvements thereon in good repair, and after the payment of taxes, repairs and improvements, and other necessary expenses, the balance should be paid out and expended by my said executors and trustees as hereinafter more particularly set forth. In no case shall this will be construed so as to authorize or empower said executors and trustees to sell or encumber said real estate.

"Article Ten: I further direct that all profits, interest and income received by my said executors and trustees from the following described real estate, (describing the premises here involved with other lands), and also the profits, interest and income received by my said executors and trustees from one-half of my personal or mixed estate, after deducting taxes, money laid out for repairs and improvements, commissions, and all necessary expenses incident to this trust, shall, during the life of my daughter, Freida M. Fehling, be paid annually by my said executors and trustees to my daughter, Freida M. Fehling, and her receipt for such payment shall be a full and sufficient acquittance and discharge of my said executors and trustees.

"Article Eleven: Upon the death of my said daughter, Freida M. Fehling, or if she shall die before *348 me, I hereby give, devise and bequeath all the real estate described in Article Ten of this will, and also one-half of all my personal or mixed estate unto her issue, if any, and if none, then to my grandchildren, whoever they may be, share and share alike, to them, their heirs and assigns forever."
[2, 3] In an Eminent Domain proceeding, the plaintiff is required at its peril, to ascertain and name in the petition the true owner of the land sought to be condemned and taken, and the person so named as owner in the petition is not required to prove title. Averments of the petition as to the nature or extent of the estate or title of the defendants are not binding on the defendants, but are on the petitioner. (Department of Public Works & Buildings v. Sohm, 315 Ill. 478, 483, 146 NE 518).
In Gridley v. Gridley, 399 Ill. 215, 76 NE2d 146, the court stated (p 225): "If an estate is devised to a trustee, the trustee will take only so much of the legal estate as the purposes of the trust require. He will in such case, or even if there be no formal devise, acquire an estate commensurate with the powers conferred and the purposes to be accomplished. If the fee is required it will be taken, and if the trustee will be enabled to execute the trust with a less estate, that alone will vest in him. If a trustee is required to collect and pay the rents of property for a definite period, he will take an estate for years. If he is charged with such duties for the life of an individual, he will take an estate for the life of that person, and if his duties are of indefinite duration, he will take the fee. Harvey v. Ballard, 252 Ill. 57, 96 NE 558. In this case the devise to the trustees was `for the use and benefit of my daughter, Mary, now Mrs. Mary Bell, during her natural life,' and it was provided that, `at the *349 death of the said Mary such trust estate shall cease and be determined.' There was no direction for a conveyance by the trustees upon the expiration of the trust, but the will provided that the fee should vest in the contingent remaindermen without the aid of a conveyance, upon the death of the life tenant. The duties of the trustees were to rent the property, keep it in repair, pay the taxes and assessments, keep the buildings insured, and pay all remaining rents and income into the hands of the life tenant in person. These duties were to terminate with the death of the life tenant, and the trustees were given no power and charged with no duty thereafter. The legal estate devised to the trustees was not an estate in fee, but was a life estate for the life of Mary Gridley Beal. Beal v. Higgins, 303 Ill. 370, 135 NE 759; Harvey v. Ballard, 252 Ill. 57, 96 NE 558."
[4] In the instant case, the provisions of the will of Henry Fehling prohibited the trustees from selling or encumbering the property in question. The only duties the trustees had were to rent the property, collect the income therefrom, keep the property in repair, pay taxes, and distribute, annually, the net proceeds to the life beneficiary, Freida M. Kronsbein. The devise to the trustees gave them the legal estate for the lifetime of Freida Kronsbein, but upon her death, the duties of the trustees will terminate. The trustees, therefore, had, at the time the petition to condemn was filed, a life estate for the life of Freida M. Kronsbein in the property sought to be condemned.
The petition for condemnation filed in 1953 did not directly allege that Harold William Kronsbein was the owner of the fee of the premises sought to be condemned, but did allege that Henry Fehling, at the time of his death, was the owner of the tract sought to be condemned; that his will was duly admitted to probate; that W.J. Steele and Ivy Steele are the *350 duly appointed, qualified and acting trustees and now hold these premises for the benefit, during her lifetime, of Freida M. Kronsbein; that said will devised said premises, on the death of Freida M. Kronsbein to her issue, and that Harold William Kronsbein is the son and issue of Freida M. Kronsbein, and has a certain interest in said real estate under said will. If this "certain" interest, which the petition alleged appellee inherited from his grandfather, was a vested interest, he was an indispensable party to this proceeding.
[5-8] The Eleventh Article of Henry Fehling's will devised the fee to the premises involved herein to the issue of his daughter, Freida. The word "issue" as a general thing, means lineal descendants indefinitely. When the word "issue" is used in reference to the parent of that issue, as where the issue are to take the share of the deceased parent, it must mean his children, that is, the word "parent" confines the word "issue" to the children of the taker. (Arnold v. Alden, 173 Ill. 229, 238, 239, 50 NE 704). At the time of the death of Henry Fehling, his daughter, Freida Kronsbein, was living. Her son, Harold William Kronsbein, was born in 1917 and is a lineal descendant of the testator. No other conclusion can be arrived at than that the word "issue," as used in said Article Eleven of the will of Henry Fehling, meant the child or children of his daughter, Freida. There is nothing in his will to indicate that he used the word issue to mean anything other than "child" or "children." These terms are generally used synonymously. (Noth v. Noth, 292 Ill. 536, 542, 127 NE 113).
[9, 10] The fact that the testator, after having devised an estate for the life of his daughter, Freida M. Kronsbein, to his trustees, used the words "upon the death of my said daughter," does not make the remainder interest which passed, contingent upon the *351 theory that those in whom the remainder is to vest are not to be ascertained until the death of appellee's mother. These words refer to the time when the remainder is to fall into possession of the remainderman and not to the time when it is to vest. (Dyslin v. Wolf, 407 Ill. 532, 541, 542, 96 NE2d 485). Where a testator makes a devise to one person for life with remainder to the life tenant's child or issue, the devise vests the remainder interest in the child of the life tenant just as soon as a child is born, subject to the remainder interest being opened to let in any after born child or children of the life tenant. (Field v. Peeples, 180 Ill. 376, 381, 54 NE 304; Whittaker v. Porter, 321 Ill. 368, 377, 151 NE 905). Under the authorities, appellee had a vested remainder in the land sought to be condemned, possession only being postponed because of the life estate.
[11] There is no merit in appellants' suggestion that the trustees represented all the heirs mentioned in the will of Henry Fehling. The devise to the trustees was for the lifetime of Freida Kronsbein, with the remainder interest vested in appellee. Being the fee owner of the premises sought to be condemned, he, Harold William Kronsbein, was an indispensible party to the proceeding.
[12, 13] There was no valid personal service or valid service by publication on defendant, Harold William Kronsbein, and the unauthorized answer filed by Mr. Joseph Steele, purporting to represent him did not give the court jurisdiction over his person. Where an attorney entering the appearance of a defendant does so without authority, the judgment based on such fact is void. (Bruschke v. Der Nord Chicago Schuetzen Verein, 145 Ill. 433, 437, 34 NE 417.) In Anderson v. Hawhe, 115 Ill. 33, 3 NE 566, an attorney appeared and filed a demurrer on behalf of Mary H. Hawhe, a defendant in an attachment proceeding. In *352 a subsequent creditor's bill based upon the judgment rendered in the former proceeding, Mary H. Hawhe filed an answer and crossbill in which she averred that she had never been served with process, did not appear, and had never authorized any appearance in the attachment proceeding. In sustaining her contention the court said: (p 38) "Where a court renders judgment against a defendant, where the court has no jurisdiction of the person, no argument is needed to prove that such a judgment is void and a creditor's bill could not be predicated on a void judgment. Here, an attorney at law appeared and interposed a demurrer to the declaration.  The attorney had no authority whatever from the defendant to appear in the case, and as his acts were entirely unauthorized, what he did could not be binding on her. It would be establishing a dangerous precedent to hold a judgment valid where there had been no service, merely for the reason that an attorney had appeared on his own motion, without authority and filed some sort of a plea, in the case.  We are not prepared to hold that a person may have his property taken in satisfaction of a void judgment and be turned over to an insolvent attorney for redress, which might often be the case if a judgment like the one in question could be enforced."
[14] The affidavit upon which the publication notice was based was insufficient. This affidavit stated that defendant, "on due inquiry cannot be found and his present place of residence is unknown, and that upon diligent inquiry, his place of residence cannot be ascertained." The affidavit did not contain the required words "so that process cannot be served upon him." The failure to include such wording made the affidavit fatally defective, and the publication based upon it void. (Albrecht v. Hittle, 248 Ill. 72, 93 NE 351; Anderson v. Anderson, 292 Ill. App. 421, *353 11 NE2d 216). The insufficiency of this type of affidavit is set forth in Nichol's Illinois Civil Practice, where it is stated: "If an affiant states as his ground for publication that defendant is a nonresident of the state, it is unnecessary to state that he cannot be served with process, since the provision of the statute requiring a statement that process cannot be served upon a defendant relates only to one who is concealed within the state or on due inquiry cannot be found. This is the construction placed by the court upon the statutory words `so that process cannot be served upon him.' But an affidavit merely stating that upon due and diligent inquiry defendant's place of residence cannot be ascertained, and stating his last known place of residence, is insufficient for failure to show inability to personally serve defendant." (1 Nichol's Ill Civ Prac c 24, § 644.)
[15-17] The defenses of laches or estoppel are equitable and do not apply to a case where the court never acquired jurisdiction over the person of the defendant. (Irving v. Rodriquez, 27 Ill. App.2d 75, 169 NE2d 145; Hustana v. Hustana, 22 Ill. App.2d 59, 65, 159 NE2d 265; Stern v. Sheffield, 2 Ill. App.2d 311, 120 NE2d 62.) Laches is never a defense to a void judgment. It may be impeached at any time, and no defense on the merits is required to be shown in order to vacate it. (Ray v. Moll, 336 Ill. App. 360, 365, 84 NE2d 163; Green v. Unity Container Corp., 7 Ill. App.2d 215, 221, 129 NE2d 458; Hustana v. Hustana, 22 Ill. App.2d 59, 65, 159 NE2d 265.) Furthermore, it was not until October 13, 1960 appellee learned that he was a necessary party to the condemnation proceeding, and his motion to vacate the prior judgment was filed on November 10, 1960.
[18-21] Inasmuch as the court lacked jurisdiction over the defendant, Harold William Kronsbein, the judgment rendered against him is null and void, and *354 not merely voidable, and it may be attacked at any time, in any court, either directly or collaterally. (Rompza v. Lucas, 337 Ill. App. 106, 116, 85 NE2d 467; Barnard v. Michael, 392 Ill. 130, 135, 63 NE2d 858.) "A decree or order of condemnation does not bind any proper party to the condemnation unless due service was had on such party." (Illinois Power Co. v. Miller, 11 Ill. App.2d 296, 307, 137 NE2d 78.) A payment to the life tenant in a condemnation proceeding is of no effect as to the remainderman. (Bartlow v. Chicago, B. & Q.R. Co., 243 Ill. 332, 336, 90 NE 721.)
The judgment of the Circuit Court of Madison County must be affirmed.
Judgment affirmed.
REYNOLDS and WRIGHT, JJ., concur.