**ZALE CORPORATION, Appellant,**

v.

**E. I. DuPONT de NEMOURS AND COMPANY, Appellee.**

No. 18053.

Court of Civil Appeals of Texas, Dallas.

April 12, 1973.

Rehearing Denied May 3, 1973.

**230**

Robert L. Meyers, III, Boe W. Martin, Stalcup, Johnson & Williams, Dallas, for appellant.

Royal H. Brin, Jr., Strasburger, Price, Kelton, Martin & Unis, Dallas, for appellee.

BATEMAN, Justice.

This is the second appeal in this case. Our opinion on the first appeal is found in E. I. DuPont de Nemours & Company v. Zale Corporation, 462 S.W.2d 355 (Tex. Civ.App., Dallas 1970, writ ref'd n. r. e.). As shown by that opinion, the trial court had denied the specific performance prayed for and we reversed and rendered judgment granting specific performance. As in the former opinion, the parties will be called Zale and DuPont, respectively.

The only ultimate question presented to us for decision on the former appeal was whether DuPont had given timely notice of its exercise of an option to purchase the land and building which it had leased from Zale's predecessors in title, J. L. Williams and Morris Spencer, in August, 1964. Williams and Spencer had agreed in the lease to erect a building covering 20,000 square feet of the land, and gave DuPont an option to purchase the land and building. In October, 1967 Zale purchased the property. It received notice of DuPont's exercise of the option but refused to convey the property to DuPont, claiming that the notice was too late.

After we granted the specific performance "as prayed" for by DuPont, Zale tendered a deed which was refused by DuPont on the ground that it did not convey a good and marketable title to the building and land. DuPont thereupon filed a motion in the district court which had rendered the original judgment, asking that court to enforce our judgment by investing it with title to the 20,000 square-foot building, appurtenances and improvements, and the land under them, being Lots 4 and 5 and the northeast 52 feet of Lot 3, Block 1/6368 of the Expressway Industrial District of the City of Dallas. After due notice and hearing this motion was sustained, and the court entered the order now appealed from. We affirm.

At the time the lease and option were executed work on the improvements de-

scribed therein had not been started and was not completed until December of 1964, at which time DuPont took possession. The property is located on three adjacent tracts—all of Lots 4 and 5 and a portion of Lot 3—of a certain block. Our only question now is as to what portion of Lot 3 is covered by the option. Zale contends that it is only the northeast 44.17 feet thereof, and DuPont contends that it is the northeast 52 feet.

The substance of our judgment on the former appeal is in the last two sentences of the opinion, as follows:

"Under these circumstances, we think DuPont showed itself entitled to a judgment requiring Zale to sell the property to it under the terms of the contract.

"The judgment is reversed and judgment here rendered granting specific performance as prayed."

In DuPont's original petition for specific performance, we find the following pertinent language in its prayer:

" * * * Plaintiff prays * * * for Specific Performance of such OPTION TO PURCHASE, and that Defendant be required and ordered to properly execute, sign, acknowledge and deliver to Plaintiff a general warranty deed conveying the *good and merchantable title* of said described land and premises *and improvements thereupon* to Plaintiff and that title to and of said described land and premises be divested out of * * * Zale * * * and * * * in Plaintiff * * * DuPont * * *."[1]

In the original option agreement, entered into simultaneously with the said lease, we find the following language:

"WHEREAS, DU PONT is entering into a lease with OPTIONORS contemporaneously herewith, covering Lots 4 and 5 and the N.E. 44.17 feet of Lot 3,

Block 1/6368, * * * *together with the 20,000 square foot building and other improvements* to be constructed thereon, *hereinafter referred to as 'OPTIONED LAND,* ' * * *."

Also in the said option agreement is the following provision:

"OPTIONORS shall convey OPTIONED LAND to DU PONT on settlement date by a good and sufficient general warranty deed * * * *granting and conveying good, marketable, fee simple title* to said land to DU PONT, free and clear of all liens, encumbrances, restrictions, * * * exceptions or other defects."

It is noted here that Zale's predecessors, in the above provisions in the option, agreed to convey good and marketable title to the 20,000 square foot building and other improvements as well as to the land itself. All are included in the phrase "OPTIONED LAND."

The lease, a copy of which is also attached to the original petition, contains the following description:

"Being all of Lots 4 and 5 and the northeast 44.17 feet of Lot 3, Block 1/6368, of the Expressway Industrial District of the City of Dallas, Texas, and *containing approximately 61,042.5 square feet of land,* * * * together with the fully air conditioned and sprinklered, masonry office and warehouse building *to contain approximately 20,000 square feet* of usable floor space (consisting of approximately 4,756 square feet of office space and 15,244 square feet of warehouse space), the parking, trucking and loading facilities and other appurtenances and improvements to be made or constructed on the said leased premises, *all as provided in the plans hereinafter specified,* and together with all the rights, easements and appurtenances to the same belonging or usually held and enjoyed

1. Unless otherwise noted, all italics are ours.

therewith, to be used for any lawful purpose consistent with the TENANT's business."

The lease also contains the following provision:

"LANDLORD covenants and agrees to erect and to complete on or before December 16, 1964 * * * said building and said appurtenances *in accordance with the plans and specifications dated Aug. 3rd, 1964*, entitled, 'A building for E. I. DU PONT DE NEMOURS & CO., Commonwealth Dr., Dallas, Texas' identified by the signatures of the parties hereto and *incorporated herein by reference thereto*."

DuPont was thus entitled to more than a mere conveyance of "Lots 4 and 5 and the N.E. 44.17 feet of Lot 3." It was also entitled to a good and marketable title, not only to the said land, but also to the building and appurtenances thereto which extended some 52 feet into Lot 3.

It is true that the 44.17 feet dimension appears in the lease and the option agreement, but those are not the only figures entering into the description of the property. In the lease it is also described as containing approximately 61,042.5 square feet of land, and the construction of a building containing approximately 20,000 square feet of usable floor space is provided for; and in the option agreement reference is also made to the 20,000 square foot building and other improvements to be constructed on the land.

The witness J. L. Williams swore that in the lease and option agreement which he and Spencer gave to DuPont they agreed to erect a building to contain 20,000 square feet, in addition to other improvements; that from the plans and specifications for the building and other improvements it was determined that the width of the building tract would be 244.17 feet; that in preparing the description of the land to be covered by the lease it was assumed that each of the lots involved was 100 feet in

width, in consequence of which the land was described as being Lots 4 and 5 and 44.17 feet of Lot 3; that at about the time of those negotiations he and Spencer sold or leased Lot 6, Block 1/6368 to Wilson's Sporting Goods, but it was discovered that Wilson's Sporting Goods required slightly more footage than the 100 feet in Lot 6. Therefore, affiant and Spencer conveyed to them more than 100 feet, which resulted in making erroneous the assumption that Lot 5 was 100 feet wide, and that in fact it was only 92.17 feet wide in the recorded plat. This discovery made it obvious that the reference in the lease to 44.17 feet of Lot 3 was erroneous and that it should have been 52 feet to reflect the intention of all concerned to describe a parcel of land having a width of 244.17 feet; that accordingly he and Spencer executed a memorandum of lease showing that 52 feet of Lot 3 was leased to DuPont, and that the deed of trust in connection with the financing of the building built for DuPont shows 52 feet, as do all subsequent instruments executed by him and Spencer; that a survey plat of the entire district was prepared in October, 1967 and showed that the building in fact occupied 52 feet of Lot 3; that this survey plat was shown to Ben Lipshy, to whom the property was conveyed as Zale's trustee, prior to the closing of the sale. There was also other testimony to show that at the time it bought the property from Williams and Spencer in October, 1967 Zale had both actual and constructive knowledge of the fact that the building in question extended 52 feet into Lot 3.

Moreover, the deed from Williams and Spencer to Zale's trustee, Lipshy, was expressly made and accepted subject to the deed of trust given to secure the financing of the building in question and expressly states that the deed of trust "affects a strip of land 52 feet in width off the entire Northeast side of Lot 3, all of Lots 4 and 5 in Block 1/6368." This latter statement is also in the deed from Lipshy to Zale.

Furthermore, the contract of sale between Williams and Spencer, as sellers,

and Lipshy as purchaser, provided for adjustment of the price according to the area shown by a survey to be made, and this survey, upon which the adjusted purchase price was based, showed that 52 feet of Lot 3 was occupied by DuPont. At the time Zale acquired the property DuPont was in possession of the entire building as tenant and thereafter paid rent to Zale.

■ Zale's tendered deed conveying only 44.17 feet of Lot 3 expressly stated that it was subject to "overlap of the improvements situated on the property herein described onto property adjacent thereto on the Westerly side * * *." The survey showed that the tendered deed would not convey all of the leased building occupied by DuPont, and the preliminary report of the title company indicated that any title policy issued by it would except encroachment. Such an encroachment makes the title of the purchaser unmarketable because the adjoining owner may compel the removal of the encroachment or sue for damages caused by it. La Salle v. La Pointe, 14 N.J. 476, 102 A.2d 761, 763 (1954); Carrick v. Gorman, 232 Ark. 729, 340 S.W.2d 377 (1960). See also 47 A.L.R. 2d 331, 344; 55 Am.Jur., Vendor and Purchaser, § 254, p. 707.

When Zale refused to convey more than 44.17 feet of Lot 3 it refused to convey marketable title to the entire building and appurtenances, which was the primary subject of the lease and the option.

It clearly appears from the survey plat prepared after the building was completed that the width of the property was 244.17 feet (92.17 feet of Lot 5, 100 feet of Lot 4, and 52 feet of Lot 3). It also appears without dispute that the lots were all 250 feet long. The tract in question was therefore a rectangle 244.17 feet in width and 250 feet long, comprising 61,042.5 square feet, the very figure appearing in the description in the original petition for specific performance, in the lease and in the option agreement; but if we include only 44.17 feet of Lot 3 in making this calculation we get an area of only 59,085 square feet.

■ It is settled in Texas that a contract to convey or a conveyance of a building carries the land on which it stands, even though the description fails to include all of that land. Wade v. Odle, 21 Tex.Civ. App. 656, 54 S.W. 786, 788 (Fort Worth 1899, writ ref'd); Worthen v. Peoples Loan & Homestead Co., 150 S.W.2d 830, 833 (Tex.Civ.App., Galveston 1941, no writ); Parrish v. Williams, 79 S.W. 1097 (Tex. Civ.App., San Antonio 1904, no writ). Authorities in other jurisdictions to the same effect are listed in the margin.[2]

■ The parties obviously intended that the land beneath the building would be properly covered by the phrase, "44.17 feet." It is clear that at that time both parties were under the mistaken impression that Lots 3, 4 and 5 were each 100 feet wide, and that by using the 44.17 figure as the determining factor, a tract 244.17 feet wide and comprising 61,042.5 square feet would be conveyed. Therefore, we agree with the trial court's determination that the intention of the parties was that DuPont had properly exercised a valid option to purchase the tract including 52 feet of Lot 3. The intent of the parties, when ascertained, will prevail over any rules of construction reaching a contrary result. Benskin v. Barksdale, 246 S.W. 360, 363 (Tex. Comm'n App.1923, jdgmt adopted); Strong v. Garrett, 148 Tex. 265, 224 S.W.2d 471, 475 (1949); Ford v. McRae, 128 Tex. 106, 96 S.W.2d 80, 83 (1936); Worley v. Em-

2. Meier v. Maguire, 172 Neb. 52, 108 N.W. 2d 397, 399 (1961); Ansin v. Taylor, 262 Mass. 159, 159 N.E. 513, 515 (1928); Harvey v. Inhabitants of Sandwich, 256 Mass. 379, 152 N.E. 625, 629 (1926);

McManus v. Wilson, 138 Miss. 1, 102 So. 543, 545 (1925); Tadlock v. Mizell, 195 N.C. 473, 142 S.E. 713, 714 (1928); Pottkamp v. Buss, 3 Cal.Unrep. 694, 31 P. 1121 (1892).

pire Gas & Fuel Co., 129 Tex. 532, 103 S.W.2d 368, 370 (1937).

■ As said in Laufer v. Moppins, 44 Tex.Civ.App. 472, 99 S.W. 109, 110 (Galveston 1906, no writ):

"The intention of the parties must control in determining what land was actually bought and sold, and, when that intention is clearly shown by the evidence, any mistake in the description contained in the deed of conveyance should be corrected, and the deed made to conform to the intention of the parties."

See also the following pertinent language in Arambula v. Sullivan, 80 Tex. 615, 16 S.W. 436, 437 (1891):

"The evidence was intended, we presume, not to correct or reform the deed, but to aid in rightly interpreting the descriptions. The object was, or should have been, to ascertain the intention, or understanding of the parties at the time of the execution of the deeds, as well as the true meaning of the descriptions of the premises therein, read in the light of the surrounding circumstances as they really existed at the time."

In its three points of error on appeal, Zale urges: (1) that the district court lacked jurisdiction to correct "a judicial error" in the final judgment of this court; (2) that DuPont's remedy, if any it has, must be obtained in a separate suit; and (3) that DuPont is judicially estopped from asserting that the description of the land contained in its sworn pleadings in the original case was incorrect. We see no merit in these points and overrule them.

■ In our opinion, the trial court had jurisdiction to enforce our judgment by hearing DuPont's motion and correcting the obvious latent ambiguity in the description. If it had refused to hear the motion it could properly have been compelled to do so by mandamus in this court. Although the motion here under scrutiny is unusual, it is not different in principle from a motion that a party be held in contempt for not complying with the judgment of an appellate court. See Rosenfield v. Campbell, 276 S.W. 728, 730 (Tex.Civ.App., Galveston 1925, no writ), wherein it was held that when a judgment of a district court has been reversed and rendered for the appellant, the judgment so rendered becomes the judgment of the district court, and that that court is not only authorized but is under a duty to enforce it.

The motion did not call for the correction of a judicial error, as was the case in Coleman v. Zapp, 105 Tex. 491, 151 S.W. 1040 (1912), and in Finlay v. Jones, 435 S.W.2d 136 (Tex.Sup.1968). In truth, the purpose of the motion was not to correct any error in the judgment, judicial or clerical. The judgment was that DuPont have specific performance "as prayed." It had prayed that Zale be required to honor its option to purchase the building it had been occupying for several years and the land on which it was situated. Our judgment did not specify any dimensions of the land for the record then before us did not indicate that there was any dispute as to dimensions. To enforce our judgment, it became necessary for the trial court to resolve the inconsistencies in the description of the land to give effect to the obvious intent of all parties. The court correctly did so.

Zale relies on the recent case of Dikeman v. Snell, 490 S.W.2d 183, 186 (Tex.Sup. 1973). In that case the first judgment required the construction of a brick fence 12 inches thick. The *nunc pro tunc* judgment provided the fence could be of wood and only 2 inches thick. The Supreme Court held that the mistake was a judicial and not a clerical mistake and that the *nunc pro tunc* judgment was void. That case is not controlling here, for there the *nunc pro tunc* judgment purported "to readjudicate or rewrite and change the decre-

tal portion" of the former judgment, while in the case at bar the trial court merely interpreted our judgment by setting out the true dimensions of the tract of land and building and its appurtenances in accordance with the clear intention of all parties to the original transaction.

■ We overrule Zale's contention that DuPont should have filed a separate suit. To require the filing and the trial of a separate suit to make this correction would put the parties to unnecessary expense and inconvenience. In Speaker v. Lawler, 463 S. W.2d 741 (Tex.Civ.App., Beaumont 1971, writ ref'd n. r. e.), it was held that a new suit for declaratory judgment could not properly be used for the purpose of asking the trial court to interpret a prior judgment entered by it or another court. To the same effect, see also Glassford v. Glassford, 76 Ariz. 220, 262 P.2d 382, 386 (1953); Lawrence v. Lawrence, 87 Ga.App. 150, 73 S.E.2d 231 (1952); Illinois Power Co. v. Miller, 11 Ill.App.2d 296, 137 N.E.2d 78 (1956); Shattuck v. Shattuck, 67 Ariz. 122, 192 P.2d 229, 235 (1948).

■ Moreover, DuPont was not in our opinion judicially estopped from asserting that the description contained in its sworn pleadings in the original case was incorrect. In asking the court to use the description which the undisputed evidence showed to be correct, and which differed from that contained in its petition only in the one detail, DuPont was not taking "a position" inconsistent with or different from that taken in its pleadings in the original case, as was attempted in Long v. Knox, 155 Tex. 581, 291 S.W.2d 292 (1956); Yarber v. Pennell, 443 S.W.2d 382 (Tex. Civ.App., Dallas 1969, writ ref'd n. r. e.) and other cases cited by Zale.

All of appellant's points of error are overruled and the judgment is affirmed.

GUITTARD, J., not sitting.