(No. 33511.—■■■■■■■■)

THE EXCHANGE NATIONAL BANK OF CHICAGO, Trustee, *et al.,* Appellees, *vs.* THE COUNTY OF COOK, Appellant.

*Opinion filed September 23, 1955.*

John Gutknecht, State's Attorney, of Chicago, (Gordon Nash, Martin R. Handleman, Robert F. Mackey, Charles D. Snewind, and William Sylvester White, of counsel,) for appellant.

Richard G. Finn, and J. Glenn Shehee, both of Chicago, for appellees.

Mr. Justice Daily delivered the opinion of the court:

Plaintiffs, alleging that the Cook County zoning ordinance is so unreasonable, capricious and discriminatory as to infringe upon their constitutional rights of due process and equal protection of the laws, filed a complaint in the circuit court of Cook County for a declaratory judgment that said ordinance is invalid insofar as it relates to their property. After a hearing before a master the court granted the relief sought and the defendant-county has prosecuted this appeal.

The record discloses that plaintiffs, who are the Exchange National Bank, trustee, and the Consolidated Paper Converter Corporation, own a tract of vacant land on the west side of Cicero Avenue at Seventy-sixth Street, very near the Chicago city limits. The property, which is presently zoned for single family·dwellings, has a frontage of 328 feet on Cicero Avenue and a depth of 1152 feet. Prior to the institution of this action, plaintiffs filed a petition

for a change of classification with the zoning board of appeals for the county which recommended to the county commissioners that the property be rezoned for industrial uses. The latter, however, did not act on the recommendation and plaintiffs here state that the commissioners have refused to either pass an amendatory ordinance or to grant a further hearing. This action was then commenced and it is alleged in the complaint, as amended, that plaintiffs desire to utilize and develop the property for purposes of light industry but are prevented from doing so by the current residential classification. During the hearing of the cause it was brought out that plaintiffs have entered into a contract to sell the land to a corporation which plans to use it for a trucking terminal, such contract being contingent upon plaintiffs' success in securing a zoning reclassification. It is this. feature of the case which has prompted defendant's first assignment of error, namely, that the circuit court was without jurisdiction because no actual controversy exists between the parties within the meaning of the declaratory judgment provisions of the Civil Practice Act. (Ill. Rev. Stat. 1953, chap. 110, par. 181.1.) In making this contention, defendant takes the position that plaintiffs, by bringing this action, seek only an advisory opinion, rather than an adjudication of rights, in an effort to reassure their prospective purchaser of the uses for which the property will be available.

The section of the Practice Act authorizing the use of declaratory judgment procedures provides, in part, as follows: "* * * the court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, * * *." We have repeatedly held that such provision does not authorize the court to grant declarations of rights involving mere abstract propositions of law without regard to the interest of the parties, and that before a declaration of rights may be made there must

be an actual controversy. (*Spalding* v. *City of Granite City,* 415 Ill. 274; *Saline Branch Drainage Dist.* v. *Urbana-Champaign Sanitary Dist,* 399 Ill. 189.) No one can doubt the interest of the parties here, leaving only a determination of whether an actual controversy exists between them. The term "actual controversy" is also found in the Federal Declaratory Judgment Act, (28 U.S.C.A. sec. 2201,) and of it the Supreme Court of the United States has said: "The word 'actual' is one of emphasis rather than of definition. * * * A 'controversy' in this sense must be one that is appropriate for judicial determination. * * * A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. * * * The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. * * * It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. * * * Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages." *Aetna Life Ins. Co.* v. *Haworth,* 300 U.S. 227, 240.

Testing the instant case by these former decisions, it becomes manifest that there is here a dispute between parties who face each other in an adversary proceeding. The dispute relates to the legal rights and obligations arising out of the zoning ordinance and is neither hypothetical nor abstract. Plaintiffs have taken the position that the ordinance arbitrarily and unreasonably restricts the use of their land to the point of confiscation, and have sought to lift such restriction. The defendant, by refusing to rezone

as recommended by its appeals board or to further hear the matter, has taken an adverse position with respect to the validity of the ordinance and the existing rights of the plaintiffs in their land. Such a dispute is most certainly an actual controversy susceptible of a judicial determination. It calls, not for an advisory opinion on a hypothetical basis, but for an adjudication of present rights. As we view it, the fact in evidence that plaintiffs will sell their land once the allegedly unreasonable and discriminatory regulation is removed, serves to emphasize, rather than to diminish, the justiciable controversy over the question of whether the ordinance is unreasonable and confiscatory. We conclude that a challenge of a zoning classification which, of necessity, puts in issue the question of whether the exercise of the police power is paramount to the rights of the individual, presents a real, substantial and actual controversy. (See: 68 A.L.R. 126; 174 A.L.R. 848; *Pitman* v. *City of Medford,* 312 Mass. 618, 45 N.E. 2d 973.) The first contention of defendant must therefore fail.

There remains for consideration the question of whether the classification of plaintiffs' property as residential is arbitrary, discriminatory and confiscatory. The facts show without dispute that plaintiffs' land is completely surrounded by industrial areas, that it is both practically and economically unsuited to adaption for residential purposes, and that the surrounding areas do little to justify a conclusion that the residential classification tends to promote the public health, safety or welfare. Defendant, by the scope of its assignments of error and argument, concedes such facts to be true. Thus, without more, we would be justified under such circumstances in holding the ordinance unenforceable against plaintiffs' property under authority of the recent decisions in *Hannifin Corp.* v. *City of Berwyn,* 1 Ill. 2d 28, and *Chicago Title and Trust Co.* v. *Village of Franklin Park,* 4 Ill. 2d 304. Defendant, how-

ever, in here seeking to justify the residential classification of the property as a valid exercise of the police power, contends that it bears a direct and substantial relation to the public safety and welfare in that its enforcement will reduce vehicular traffic and avoid congestion on Cicero Avenue, a public highway.

It is undisputed that Cicero Avenue is a main and heavily traveled artery of traffic, six lanes in width. A witness for plaintiffs testified that approximately 29,000 vehicles, equally divided between private and commercial, pass over it daily in the area in question. An expert for defendant was of the opinion that the figure was 40,000 to 50,000, of which 70 per cent are passenger and 30 per cent commercial. The latter also testified that relatively slow rates of acceleration together with greater distance needs for stopping, caused trucks to be a hindrance to the flow of traffic, and that a recommendation had been made to the city council of Chicago that trucks be prohibited from nearby Archer Avenue in an effort to curtail the unusually heavy flow of trucks along Cicero Avenue and over Archer Avenue. As we interpret the record, witnesses for both parties appeared to agree that the terminal proposed to be erected on plaintiffs' land would generate about 40 trucks daily. Evidence relating to sources of traffic in the immediate area shows that there are presently four truck terminals within a space of 700 feet from plaintiffs' tract and, altogether, five to six terminals within a mile of it. Also within the immediate vicinity, at Cicero and Sixty-ninth, is a warehouse covering some twenty acres and, on the east side of Cicero Avenue extending from Seventy-ninth to Sixty-ninth streets, an aircraft engine plant where approximately 8000 cars are parked for each work shift. From Sixty-seventh to Sixty-third streets are located still other commercial properties which include the railroad yards of the Clearing Industrial District, and from Sixty-third to Fifty-fifth streets is located the eastern boundary

of the Chicago Municipal Airport. All contribute to a difficult traffic problem but we are of the opinion that the circumstances do not save the ordinance from being confiscatory, unreasonable and unconstitutional in its application to plaintiffs' property.

Although zoning for the purpose of reducing traffic and avoiding congestion is a permissible exercise of the police power, (Ill. Rev. Stat. 1953, chap. 34, par. 152i; *County of Du Page* v. *Henderson,* 402 Ill. 179,) a zoning ordinance for such purpose must bear a reasonable relation to the public safety. In numerous zoning.cases, typified by *Langguth* v. *Village of Mount Prospect,* 5 Ill. 2d 49, *Northern Trust Co.* v. *City of Chicago,* 4 Ill. 2d 432, *People ex rel. Joseph Lumber Co.* v. *City of Chicago,* 402 Ill. 321, and *Anderman* v. *City of Chicago,* 379 Ill. 236, this court has adhered to the doctrine which is succinctly stated in McQuillin on Municipal Corporations as follows: "Where the public interest is nonexistent or insignificant and the opposing private interest will suffer great injury; the zoning measure is unreasonable and, hence, is violative of due process and equal protection guaranties." (Vol, 8, sec. 25.43, 3d ed. 1950.) When this rule is applied to the present case, it becomes manifest that whether the daily flow of vehicles on Cicero Avenue is 29,000 or 50,000 the increase in traffic which will be caused by the operation of the proposed truck terminal on plaintiffs' property would be so insignificant and minimal as to bear little relation to the public safety. On the other hand, if the residential classification is enforced, the damage to the plaintiffs is considerable and the effect is confiscatory. In principle, the facts of the case bear a strong resemblance to those in *Petropoulos* v. *City of Chicago,* 5 Ill. 2d 270. There the property owner desired to erect a filling station on the corner of Cicero and Foster Avenues and although it was recognized that Cicero Avenue is a major traffic artery accommodating large masses of traffic, it was held that the

restrictions in the Chicago zoning ordinance, (there, as here, a residential classification,) "are not necessary to the end * * * that congestion (*in any appreciable degree*) in the public streets may be lessened or avoided;". [Emphasis supplied.] The same is true in the instant case, for even if the residential classification is enforced, the result will be an increase in the traffic on Cicero Avenue at least equal to that which will occur from a truck terminal of the size proposed.

Apart from the foregoing, we are of the opinion that the evidence of traffic conditions introduced by defendant is itself demonstrative of the unreasonableness of the residential classification. Indeed, an expert who testified for defendant stated that "Cicero is dangerous to anyone who lives within a mile of it." We conclude that the trial court properly held that the plaintiffs' property is wholly unsuited for residential purposes, that to so restrict its use has the effect of destroying substantial values, and that the public interest which will be subserved is so insignificant as to render the ordinance unreasonable and therefore violative of due process and equal protection guaranties.

*Judgment affirmed.*