Sam Trossman, Appellant, v. Frances D. Trossman, Appellee.

Gen. No. 47,799.

First District, First Division.

February 29, 1960.

Released for publication March 29, 1960.

Ruskin and Rosenbaum, of Chicago, for plaintiff-appellant.

Friedman, Friedman, Teed & Armstrong, and Lawrence S. Adler, of Chicago (Sol R. Friedman, Irving S. Friedman, and Lawrence S. Adler, of counsel) for defendant-appellee.

JUSTICE McCORMICK delivered the opinion of the court.

The questions presented to this court by this appeal are whether an action for a declaratory judgment will lie during the lifetime of the parties to declare valid an antenuptial agreement and whether the complaint presents an actual and justiciable controversy.

The complaint in the instant action averred that the parties, Sam Trossman (hereafter referred to as plaintiff) and Frances Trossman (hereafter referred to as defendant), are husband and wife; that both the plaintiff and the defendant had been married before and had children; that no children were born of the present marriage; that prior to the marriage both plaintiff and defendant had disclosed to each other the real estate and property of which they were possessed; that at the time of the marriage the defendant had sufficient means and resources to support herself; and that the parties entered into an antenuptial agreement, at which time both of them were represented by attorneys. By the terms of the carefully drawn antenuptial agreement it was agreed that the property rights of the parties to the contract should be and remain absolutely and forever separate and distinct as though marriage had not taken place, and that the contract should remain in full force and effect whether the marriage was terminated either by death or divorce. There was a further provision in the contract by which the parties thereto agreed they would at the request of the other execute deeds necessary to convey the property of the other and extinguish any right of dower, curtesy, homestead or inheritance in each other's estate. The complaint further avers that a case of actual controversy now exists between the parties, the defendant asserting that the agreement is invalid and of no force and effect and that she will, notwithstanding it, in the event of plaintiff's prior death, seek dower and an intestate share in the plaintiff's estate; that plaintiff's position is that the said antenuptial agreement is valid and binding upon both and that it must be observed in their lifetime and in the event of the death of either; and that it is necessary that the court render a declaratory judgment declaring the

rights and other legal relations of the parties with respect to the said antenuptial agreement and the positions of the respective parties thereto with respect to the same. A copy of the antenuptial agreement was attached to the complaint.

The defendant moved to strike and dismiss the plaintiff's complaint, and in the motion set up, among other things, that the complaint failed to state a cause of action; that the controversy therein set forth is not justiciable at the present time; and that the relief prayed for therein is prior to any actual injury to the plaintiff and is founded on speculation and conjecture. The court on April 17, 1959, entered a judgment order as of March 30, 1959, finding that the controversy "set forth in said Complaint is not justiciable at the present time and that said Complaint fails to state a cause of action for declaratory judgment." The court dismissed the plaintiff's complaint and cause of action and ordered that the defendant go hence without day. From that judgment order this appeal is taken.

■ ■ A declaratory judgment is a new concept in the law. It was unknown to the common law and is a creature of statute. Declaratory Judgment Acts have generally received a liberal construction from the courts. The beneficial effect of a remedial statute can be negated by the court's illiberal construction. As Mr. Justice Winslow said in McArthur v. Moffett, 143 Wis. 564, 128 N. W. 445, in regard to an illiberal construction of the code of civil procedure: "The cold, not to say inhuman, treatment which the infant Code received from the New York judges is matter of history." The Illinois Declaratory Judgment Act has been given a liberal construction by our courts. Elward v. Peabody Coal Co., 9 Ill.App.2d 234; Illinois Power Co. v. Miller, 11 Ill.App.2d 296; Parkin v. Damen-Ridge Apts., Inc., 348 Ill. App. 428; Freeport Motor Cas. Co. v. Tharp, 406 Ill. 295; Jones v.

Hodges, 2 Ill.App.2d 509. Such a construction facilitates the administration of justice.

■ The purpose of the Declaratory Judgment Act is well expressed in the Notes by Messrs. Jenner and Tone to Section 57.1 of the Civil Practice Act found in the Annotated Statutes (Smith-Hurd Ill. Anno. Stat., ch. 110, § 57.1):

"The remedy is not designed to supplant existing remedies, nor afford a new choice of tribunals. It supplies a new form of relief where needed. It is designed to afford security and relief against uncertainty with a view to avoiding litigation, rather than in aid of it, and to settle and fix rights before there has been an irrevocable change of position of the parties in disregard of their respective claims of right, and thus promote peace, quiet and justice, with the end always constantly in view that one of the chief purposes is to declare rights rather than to execute them. Freeport Motor Cas. Co. v. Tharp, 406 Ill. 295, 94 N.E.2d 139 (1950); Progressive Party v. Flynn, 400 Ill. 102, 79 N.E.2d 516 (1948); Davis v. American Foundry Equip Co., C. C. A. Ind., 94 F.2d 441 . . . . As stated by the court in Sheldon v. Powell, 99 Fla. 782, 128 So. 258 (1930), the remedy is one to be employed in the interests of preventative justice and its scope should be kept wide and liberal, and not restricted by technicalities."

And as was said by Mr. Justice Murphy in Central Ice Cream Co. v. Universal Leaseway System, Inc., 20 Ill.App.2d 145:

"We understand that the scope of the declaratory judgment remedy should be kept wide and liberal and not restricted by technicalities. The thing of importance is the right and duty of the courts to grant declaratory relief where, in the interest of the proper administration of justice, it ought to be granted, regardless of how the particular action in which the

525

declaratory relief sought may be classified. This is one of the advantages of the procedure."

The particular contention before us is a matter of first impression in this State. The trial court dismissed the complaint and based its conclusion on the ground that the complaint did not set up an actual and justiciable controversy as required under the Act. ■ ■ It has been held that in order for the court to enter a declaratory judgment there must be an actual controversy. Exchange Nat. Bank of Chicago v. County of Cook, 6 Ill.2d 419. It is also the law that since the declaratory judgment statute was not designed to supplant existing remedies declaratory relief as a general rule will not be granted for a cause of action which has already accrued which is justiciable in a well-recognized form of action. 16 I. L. P., Declaratory Judgments, sec. 2. It would seem to be clearly apparent that if an action for declaratory judgment could only lie when some other legal remedy was available the passage of the Act would have been idle. Between Scylla and Charybdis there is a narrow but plain channel. In Exchange Nat. Bank of Chicago v. County of Cook, supra, the court says:

"The section of the Practice Act authorizing the use of declaratory judgment procedures provides, in part, as follows: '. . . the court may, in cases of actual controversy, make binding declarations of rights, having the force of final judgments, whether or not any consequential relief is or could be claimed, . . . .' We have repeatedly held that such provision does not authorize the court to grant declarations of rights involving mere abstract propositions of law without regard to the interest of the parties, and that before a declaration of rights may be made there must be an actual controversy. (Spalding v. City of Granite City, 415 Ill. 274; Saline Branch Drainage Dist. v. Urbana-Champaign Sanitary Dist., 399 Ill. 189.) . . . The

term 'actual controversy' is also found in the Federal Declaratory Judgment Act, (28 U. S. C. A. sec. 2201,) and of it the Supreme Court of the United States has said: 'The word "actual" is one of emphasis rather than of definition. . . . A "controversy" in this sense must be one that is appropriate for judicial determination. . . . A justiciable controversy is thus distinguished from a difference or dispute of a hypothetical or abstract character; from one that is academic or moot. . . . The controversy must be definite and concrete, touching the legal relations of parties having adverse legal interests. . . . It must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts. . . . Where there is such a concrete case admitting of an immediate and definitive determination of the legal rights of the parties in an adversary proceeding upon the facts alleged, the judicial function may be appropriately exercised although the adjudication of the rights of the litigants may not require the award of process or the payment of damages.' Aetna Life Ins. Co. v. Haworth, 300 U. S. 227, 240."

Again referring to the Historical Notes to Section 57.1 of the Practice Act in the Annotated Statutes, it is said:

"The remedy was by no means unusual or extraordinary or unheard of either in Illinois or in other jurisdictions at the time the Act was adopted. Proceedings in equity to construe trusts and wills, to instruct trustees, to quiet title, and (in interpleader suits brought by stakeholders) to settle conflicting claims to a fund are a few forms of declaratory remedy familiar to the bar which have been afforded by the courts with and without statutory sanction or authorization. . . . [Citing cases.]"

527

In a case decided by the Supreme Court of Minnesota in 1910 without the benefit of a Declaratory Judgment Act, Slingerland v. Slingerland, 109 Minn. 407, 124 N. W. 19, which was an action brought by a wife to cancel a purported antenuptial contract, the court held that such an action might be maintained by the wife during the life of the husband while the wife's rights in his property are still inchoate, and the court says:

"The plaintiff may maintain this action now, although she has no present right in the defendant's property, and although the contract has never been recorded nor has the defendant affirmatively acted upon it. Courts are established, and law and equity administered, for the purposes of justice in the adjustment of differences between man and man. The plaintiff asserts that she is in possession of all her rights as the wife of the defendant, as those rights are secured to her by the laws of the state. The defendant, she alleges, denies that she is so situated, and bases his denial upon a certain written instrument, which she alleges is invalid. Her rights in defendant's property are, it is true, inchoate and susceptible of change; but she has a present right to have determined the validity of an instrument which she sufficiently alleges she was unduly influenced to execute. In addition it would seem that now, while the parties to the instrument are alive and capable of testifying fully to the facts, is the appropriate time for the adjustment of this controversy."

In Anderson's Actions for Declaratory Judgments, 2nd Ed., Vol. 2, Sec. 586, it is stated that a declaratory judgment action "has also been used by a husband to have his antenuptial agreement construed and to sustain its validity." In the note supporting the statement in the text the case of Snow v. Snow, 270 F. 364 is cited, and the note says: "In form the cited case in-

volved the specific performance of an ante nuptial contract entered into between the parties, but in substance it was an action for declaratory relief." In the Snow case the antenuptial contract provided that the wife waived her rights to dower in her husband's property. The wife claimed that her signature to the agreement was obtained by fraud. By the agreement the defendant (the wife) was obligated to sign promptly all papers which the plaintiff should present to her for the purpose of relinquishing her interest in his estate. Plaintiff sold some real estate and submitted to her a deed for her signature. She refused to sign and be brought this suit. In answer to a rule on her, she in open court, through counsel, expressed her willingness to execute the conveyance. The court thereupon entered an order directing her to do so and she subsequently complied with that order. The court then proceeded with the case. In the appeal it is asserted that by the execution of the deed the prayer of the bill was satisfied and the suit should have been dismissed. The Court of Appeals of the District of Columbia affirmed the judgment of the District Court, holding that the case was properly decided inasmuch as it determined once for all whether or not it was the duty of the defendant to sign deeds of conveyance of her husband's real estate when they were presented to her for that purpose.

Under a Declaratory Judgment Act which in our opinion is not any broader than our Act, the Supreme Court of Pennsylvania, in Moore v. Moore, 25 A.2d 130, held that relief by declaratory judgment might be given where there is a dispute concerning an antenuptial contract. It is true that the Pennsylvania statute does provide that even though there is a special remedy for a specific type of case, nevertheless the party may obtain a declaratory judgment where the other essentials to such relief are present but the case is not yet ripe for relief through a prescribed remedy.

That provision in the statute does no more than state the commonly accepted interpretation of declaratory judgment statutes generally, and the court says:

"There can be no question that 'an actual controversy exists between contending parties.' The husband claims the right to share in the wife's personal estate if she predeceases him; she denies such right. She is in the position of not being able by will to dispose of her personalty with certainty, because of her husband's claim to a large part of it. We are 'satisfied' that he 'asserts a relation, status, right or privilege in which he has a concrete interest' which is challenged and denied by his wife, who 'asserts a concrete interest therein' and we are 'satisfied' also 'that a declaratory judgment or decree will serve to terminate the uncertainty or controversy giving rise to the proceeding.' . . . The fact that the controversy is susceptible of relief through some other remedy, does not debar declaratory judgment relief where, as here, the case is not ripe for relief by way of such other remedy, as it will not be until the wife dies."

The cases decided in our courts are in accord with the general principles set out in the foregoing decision. Exchange Nat. Bank of Chicago v. County of Cook, supra; Illinois Power Co. v. Miller, supra; Jones v. Hodges, supra. In Elward v. Peabody Coal Co., supra, a declaratory judgment was sought to determine whether a stock option was invalid. At the time the action was brought no attempt had been made to exercise the option. The court held that a declaratory judgment was proper. The court in its opinion, after pointing out that the defendants contend that since no part of the option had as yet been exercised it is premature to entertain the action before the court, said:

"No part of the option has as yet been exercised. The defendants say that if and when Gressens exer-

cises the option the directors will then determine how the agreement may be performed so that the shares issued to him will be fully paid and nonassessable, and that it is impossible to know now the circumstances which will confront the directors at the time the option is exercised. They suggest that if at that time plaintiff has reason to believe that 'actual fraud' entered into the judgment of the directors in determining the value of the consideration, then he would have a remedy. We are of the opinion that plaintiff is entitled to a declaratory decree as to whether the stock option agreement is illegal. Section 57.1 of the Civil Practice Act (Par. 57.1, Ch. 110, Ill. Rev. Stat. 1955) provides that no action or proceeding in any court of record shall be open to objection on the ground that a merely declaratory decree, judgment or order is sought thereby, and the court may, in cases of actual controversy, make binding declarations of rights having the force of final judgments, whether or not any consequential relief is or could be claimed, including the determination, at the instance of anyone interested in the controversy, of the construction of any deed, will, contract or other written instrument, and a declaration of the rights of the parties interested, but the foregoing enumeration shall not exclude other cases of actual controversy. As there is an actual controversy involving the construction and validity of the stock option agreement, the complaint is properly brought. Exchange National Bank of Chicago v. County of Cook, 6 Ill.2d 419."

In 26 C. J. S., Declaratory Judgments, sec. 28, it is said:

"It is not essential to a proceeding for a declaratory judgment that there be a violation of a right, a breach of duty, or a wrong committed by one party against the other. The mere existence of a cloud, the denial of a right, the assertion of an unfounded claim, the exist-

531

ence of conflicting claims, or the uncertainty or insecurity occasioned by new events may constitute the operative facts entitling a party to declaratory relief."

The defendant cites Skowron v. Skowron, 259 Wis. 17, 47 N.W.2d 326, where the court, in passing on an antenuptial agreement, held that the case did not present a justiciable controversy ripe for judicial determination. The plaintiff argues that the Skowron case could be distinguished from the case at bar since in that case there was no allegation in the pleadings that the husband disputed the validity of the antenuptial agreement and the only dispute concerned matters to which the contract had no application; but whether such distinction is valid or not we consider the reasoning in the three cases previously referred to (Slingerland v. Slingerland, supra; Snow v. Snow, supra; and Moore v. Moore, supra) more persuasive and more in accord with the liberal interpretation placed on the Act by our courts. Another cogent reason for holding as we do is the existence in this State of that portion of our statutes commonly known as the Dead Man's Act (Ill. Rev. Stat. 1959, ch. 51, par. 2). It would seem much more reasonable to hold that the parties in a case involving a contract such as this should have the matter decided by the courts during the lifetime of both of the parties and when both plaintiff and defendant can without any restrictions imposed by the Dead Man's Act fully and adequately present their case as to the validity of the contract. Slingerland v. Slingerland, supra, takes the same view.

■ ■ In the case before us there was an actual controversy, definite and concrete. The parties had adverse legal interests. In actions for declaratory judgments, "just as in equitable actions to quiet title or *quia timet,* no wrong need be proved but merely the existence of a claim or record which disturbs the title, peace, or freedom of the plaintiff, so any claims,

532

assertions, challenges, records, or adverse interests, which, by casting doubt, insecurity, and uncertainty upon the plaintiff's rights or status, damage his pecuniary or material interests, establish a condition of justiciability. . . . While actions for declaratory judgments may be brought either after wrong done or threatened, or prior thereto, the fact that the court must be convinced that its judgment will settle the controversy and quiet the disputed or endangered rights is an assurance against abuse of a remedy which has simplified the administration of justice and admirably served a considerable part of the civilized world." Borchard, Declaratory Judgments, 2nd Ed., pp. 39, 40. Here the controversy was neither moot nor based on a hypothetical state of facts. The contention of the defendant that the antenuptial contract was invalid would prevent a comprehensive plan being made on the part of the plaintiff to dispose of his estate either by will or otherwise. Here are present the ripening seeds of litigation. Such a dispute under the declaratory judgment statute "may be tried at its inception before it has accumulated the asperity, distemper, animosity, passion, and violence of the full-blown battle which looms ahead. It describes a state of facts indicating 'imminent' and 'inevitable' litigation, provided the issue is not settled and stabilized by a tranquilizing declaration. The dispute may be determined before the *status quo* has been altered or disturbed by physical acts of either party." Borchard, Declaratory Judgments, 2nd Ed., p. 57.

The judgment of the Circuit Court of Cook County is reversed and the cause remanded for further proceedings consistent with this opinion.

Reversed and remanded.

DEMPSEY, P. J. and SCHWARTZ, J., concur.