424 P.2d 819

The ARIZONA STATE BOARD OF DIREC-
TORS FOR JUNIOR COL-
LEGES, Appellant,

v.

PHOENIX UNION HIGH SCHOOL
DISTRICT OF MARICOPA
COUNTY, Appellee.

No. 7773.

Supreme Court of Arizona.

In Banc.

March 8, 1967.

Darrell F. Smith, Atty. Gen., Robert W. Pickrell,. former Atty. Gen., Frank Sagarino, Asst. Atty. Gen., for appellant.

. Robert K. Corbin, County Atty. of Maricopa County, Charles N. Ronan, former County Atty., James P. Cunningham, Sp. Deputy County Atty., Myron Shapiro, Deputy County Atty., Phoenix, for appellee.

· STRUCKMEYER, Justice.

This is an action by Phoenix Union High School District of Maricopa County, Arizona, against the Arizona State Board of Directors for Junior Colleges to obtain a declaration of the School District's right to receive state aid under certain Arizona statutes. The court below entered a declaratory judgment in favor of the School District, and the State Board has appealed.

Many years prior to the commencement of this action, the School District established a junior college as a part of its high school system. See A.R.S. §§ 15–601, 602 and 603. Pursuant to enactments of the State Legislature in 1960, it notified the State Board on July 7, 1961, of a claim for state aid under the provisions of A.R.S.

§§ 15–690 and 15–692, Laws of 1960, Ch. 119. On July 18th, the State Board advised the School District that it rejected the claim. This led to the present suit for a declaration of the School District's rights. Before examining the questions raised by the appeal, a brief review of the development of the junior college system in Arizona will aid in determining the legislative intent in the enactment of the controversial statutes. In 1927, the legislature first provided that a high school district having an average daily attendance of one hundred or more pupils and an assessed valuation of five million dollars could establish a junior college within the district. Laws of 1927, Ch. 84. See also §§ 1086 and 1087, Revised Code 1928. The junior college existing in the appellee School District in 1960 was organized pursuant to these statutes.

By Chapter 38, Laws of 1935, the legislature provided that one-half of the cost of maintaining a junior college would be paid by the state in a sum not to exceed $15,000 per annum.[1] The amount was, from time to time, changed by amendments. By Chapter 57, Laws of 1949, the amount was changed to a sum not to exceed $75,000 per annum and, by Chapter 11, Laws of 1957, and see Chapter 127, Laws.of 1961, A.R.S. § 15–632, as amended, it was changed to a sum not to exceed $150,000 per annum.

· In 1960, the legislature adopted Chapter 119, Laws. of 1960, Title 15, Chapter 6.1 of A.R.S., as amended, providing for an integrated state system of junior colleges. It established a junior college state board · of directors and a method for organizing

---

1. Chapter 38, Laws of 1935.
 "Sec. 1087k. STATE AID; APPROPRIATION.
 "(a) One-half of the cost of maintaining any public junior college possessing the qualifications hereinafter prescribed, not exceeding fifteen thousand dollars per annum, shall be paid by the state.
 "(b) To be eligible for state aid a public junior college shall be equipped with suitable buildings, equipment and campus, approved by the superintendent of public instruction; shall have had an average daily attendance of not less ·· than one hundred students taking courses of college grade for at least two academic years immediately preceding an application for state aid, and its academic courses shall have been substantially approved and accepted by the university of Arizona for a period of · three years.
 " * * * "

county junior college districts. Funds were provided for such districts by directing boards of supervisors in the counties where the districts were located to levy taxes at a rate sufficient to provide an amount necessary for their respective support. State aid was granted for operational expenses to any junior college organized under the act in an amount of $525 per capita per annum for the first one thousand students and $350 for each additional student. Art. 5, § 15–690.[2]

By § 15–692, subsec. A, the legislature provided:

"A. Any junior college established prior to the enactment of this chapter shall have the option of accepting state aid as provided for districts, provided that in no event shall such a junior college receive state aid in an amount less than one hundred fifty thousand dollars per annum."

A.R.S. § 15–692.

The controversy in this case arises for the reason that on July 7, 1961, the School District selected this option rather than funds under § 16–632, supra, requesting the funds from the State Board of Directors for Junior Colleges.

At the onset, the State Board concedes that by the literal language of the statute the School District is entitled to the state aid as provided by §§ 15–690 and 692. In effect, it relies on the principle controlling the decision in City of Phoenix v. Superior Court, 101 Ariz. 265, 419 P.2d 49. There we said:

"It is the well settled law of this state that in construing a statute the spirit of the enactment must be considered and, if possible, the statute will be construed consistent therewith. Courts are not controlled by the literal meaning of the language used. The spirit of the law prevails, even though possibly not its exact letter." 101 Ariz. at 267, 419 P.2d at 51.

But, of course, if the spirit of the law is consistent with its letter, there is no reason to depart from either.

The obvious purpose of establishing a statewide system of integrated junior college districts was not only to provide educational facilities in the localities where the students resided but to relieve the load on the existing state universities created by the increasing demand for higher educational opportunities. Moreover, the state recognized, by providing very substantial increased financial support, A.R.S. § 15–690, for junior colleges which would be established under the act, that education at this level is not alone a local problem but is of statewide concern. The spirit of the act would, therefore, require that established junior colleges having the necessary qualification be assisted by the state to the same extent as other institutions which fulfill the same function.

It is likewise the rule of construction that statutes must be interpreted in conformity with the language used therein, and if the language of a statute is plain and unambiguous, and can be given but one meaning which does not lead to an absurdity or impossibility, a court will follow such meaning. Marquez v. Rapid Harvest Co., 89 Ariz. 62, 358 P.2d 168. The State Board

2. A.R.S. "§ 15–690. State aid; eligibility; limitations.

"A. The cost of maintaining any district possessing the qualifications, as prescribed in this chapter, shall be paid by the state, in the following manner:

"1. For the first one thousand full-time equivalent students, five hundred twenty-five dollars per capita per annum.

"2. For all full-time equivalent students in excess of one thousand, three hundred fifty dollars per capita per annum. This subsection shall constitute a continuing appropriation.

"B. To be eligible for state aid, a district shall:

"1. Be equipped with suitable buildings, equipment and campus approved by the state board.

"2. Have three hundred twenty full-time equivalent students attending in the district.

"3. Have complied with all of the requirements of the state board including budgets and curriculum."

asserts, however, that there is an ambiguity created by this language found in subsection B of § 15–692.

"B. Any junior college established and maintained pursuant to the provisions of title 15, chapter 6 [of the Arizona Revised Statutes] *may* become part of a [junior college] district provided such district complies with the provisions of this chapter. * * *" (Emphasis supplied.)

It is argued, in effect, that the word "may" is permissive, permitting alternative courses, and that the option to which § 15–692, subsec. A, refers is to receive funds under § 15–690 dependent upon whether the junior college elects to become a part of a junior college district.

 The construction urged by the State Board strains the language of the act and arrives at several obviously undesirable consequences. First, we will not assume that the legislature was unaware of the existence of § 15–632 and, therefore, we assume that the two statutes were intended to operate as a compatible whole. Long v. Dick, 87 Ariz. 25, 347 P.2d 581, 80 A.L.R.2d 949. Since no reason is suggested why the legislature would treat junior colleges serving the same function but organized under a different statute other than the same in their financial support, we assume that it was intended to give the existing junior colleges an election to take under either statute. No other interpretation is consistent with the proviso in subsection A of § 15–692 "that in no event

shall such a junior college receive state aid in an amount less than one hundred fifty thousand dollars per annum", for that is the amount allowed under § 15–632, as amended by Chapter 11, Laws of 1957.

Second, were we to follow the interpretation urged by the State Board, we would be rewriting the act to provide that existing junior colleges could only obtain the financial benefits provided by § 15–690 if the taxpayers of the high school district agreed to integrate the junior college in the state system pursuant to A.R.S. § 15–661. Were it the intention of the legislature to compel all junior colleges to come under the state system in order to obtain the financial benefits of § 15–690, it should have been spelled out by appropriate language and not left to inference or conjecture. We note that the State Board of Directors for Junior Colleges, by adhering to its interpretation and by refusing to honor the option of the High School District, can coerce a high school district into integrating its junior college with the state system in order to receive the larger appropriation.

We attach no significance to the failure of the legislature to appropriate the funds necessary to operate the High School District's junior college. At the time the act was adopted, there was, of course, no way for the legislature to determine if any junior colleges would elect to accept the option. Thereafter, until the State Board presented a claim to the state auditor for the High School District's share of the state aid pursuant to the directions of §. 15–691,[3] there would be no reason and no

---

3. A.R.S. "§ 15–691. State aid appropriations; disbursement procedure; district fund

"A. Appropriations for state aid to junior colleges shall be made to the state board.

"B. At the beginning of each quarter of the fiscal year, the state board shall present to the state auditor, on behalf of each district for which an appropriation is made, a claim for one-fourth of the annual amount thereof assigned to the district. The state auditor shall draw his warrant in payment of the claim and the county treasurer of the

district shall place the proceeds to the credit of the district funds to be established and maintained by the county treasurer, for the support and maintenance of the district, to be expended as provided by law. Where a district consists of more than one county the state auditor shall draw his warrant in payment of the claim to the credit of the county treasurer of the county where the junior college is located, or in the event that no junior college exists, the county where the junior college is to be located."

need for the legislature to make an appropriation from the state's general funds.

This brings us to the State Board's argument that the trial court erred in giving declaratory judgment relief to the High School District, contending that there was no justiciable issue because the legislature has never appropriated any monies to the School District in furtherance of § 15–690, subsec. C,[4] and § 15–692, subsec. A.

■ A declaratory judgment will be granted only when there is justiciable issue between parties. No proceeding will lie under the declaratory judgment acts to obtain a judgment which is advisory only or which merely answers a moot or abstract question; a mere difference of opinion will not suffice. Moore v. Bolin, 70 Ariz. 354, 220 P.2d 850. See also, Manning v. Reilly, 2 Ariz.App. 310, 408 P.2d 414. But the mere fact that the legislature did not appropriate funds without more is not sufficient evidence in itself to say there was no controversy. The High School District claimed the funds as of right pursuant to § 15–692, and this claim was denied by the State Board.

> " 'The mere existence of a cloud, the denial of a right, the assertion of an unfounded claim, * * * may constitute the operative facts entitling a party to declaratory relief.' "

Trossman v. Trossman, 24 Ill.App.2d 521, 531, 532, 165 N.E.2d 368, 373, 80 A.L.R. 2d 933.

■ In the instant case, there was an actual controversy, definite and concrete, from the denial of the High School District's claim. A declaratory judgment is designed to afford security and relief against uncertainty with a view to avoiding litigation and to settle rights before there has been an irrevocable change of position by the parties. "Declaratory Judgment Acts have generally received a liberal construction from the courts." Trossman v. Trossman, supra, 24 Ill.App. 2d at 524, 165 N.E.2d at 369.

■ We therefore hold that the trial court properly found that there was a justiciable issue and was empowered to render a declaratory judgment in the case at bar.

The State Board finally urges that the decision of the superior court is moot and requires reversal because a plan for integration was approved by the voters in the proposed district, and presented to the legislature pursuant to A.R.S. § 15–662. The plan was approved by the legislature (see 1962 Session Laws of Arizona, 26th Legislature, at p. 272).

■ Declaratory relief will be based on an existing state of facts, not those which may or may not arise in the future. Merritt-Chapman & Scott Corp. v. Frazier, 92 Ariz. 136, 375 P.2d 18; City of Mesa v. Salt River Project Agr. & Imp. & Power Dist., 92 Ariz. 91, 373 P.2d 722; Moore v. Bolin, 70 Ariz. 354, 220 P.2d 850. At the time of suit, there was a bona fide controversy between the parties to this suit. The trial court was not concerned with whether the junior college might or might not later join the state system. It, therefore, was proper for the trial court to render judgment on the set of facts before it.

■ A decision becomes moot for the purpose of appeal where a change in circumstances prior to the appellate decision renders the case without practical purpose for the parties. See Dougherty v.

4. A.R.S. § 15–690, subsec. C:
"C. For the first two years of operation of any district, state aid for full-time equivalent students shall be based on the estimated annual budget. Thereafter, full-time equivalent students means the sum of the full-time equivalent students for the previous school year plus the increased full-time equivalent students of such year over the full-time equivalent students of the year prior to the previous school year, provided, that if the full-time equivalent students for the year preceding the previous year equals or is greater than the previous year, the full-time equivalent students for the previous year shall be used."

**74**

Ellsbury, 45 Ariz. 175, 41 P.2d 236. While it is true that the junior college was integrated into the state system pending this appeal, the question still remains whether the taxpayers of the High School District were entitled to state aid under § 15-690 for the budgetary year 1961-1962, for the taxpayers of the High School District have a right to the beneficial use of the monies when appropriated. That the legislature has not and, of course, cannot be compelled to appropriate the necessary funds is immaterial. The action is not moot.

The judgment of the trial court is affirmed.

BERNSTEIN, C. J., McFARLAND, V. C. J., and UDALL and LOCKWOOD, JJ., concur.