OPINION
GREER, Judge.
The main issue we consider in this ease concerns the rights and obligations of appellee Commercial Loan Insurance Co. (CLIC) as a “successor in possession” to a defaulting lessee under a policy of lease guaranty insurance it wrote to Lake Havasu Resort (Resort) as lessor. More specifically, we must- determine to what extent, if any, CLIC is obligated under the terms of the original lease agreement once it takes possession of the demised premises. The facts necessary to a resolution of this matter are as follows.
On May 23, 1969, Resort entered into a long term ground lease with McCulloch Properties, Inc. for the lease of certain real *372 property located in Lake Havasu City, Arizona. The lease was for a period of twenty-five years, with three separate ten year options. On the same date, Resort also entered into a license agreement with Ramada Inns, Inc. (Ramada), to operate a Ramada Inn motel on the leased premises. Resort subsequently constructed a Ramada Inn motel on the premises, subleased the property, and leased the motel to Lancelot Management Co. (Lancelot). The term of the sublease coincided with the remaining term of the master lease, including any option terms to be taken.
Financing for construction of the motel was obtained from Mohave Savings and Loan Association (Mohave). As a condition to the construction loan, Mohave required Resort to obtain an insurance policy guaranteeing part of the rental payments Resort was to receive. Resort purchased such a policy from CLIC. That policy guaranteed monthly rental payments of $10,187.92 for a fifteen year period, at a single premium price of $51,347.10.
Within one year after taking possession, Lancelot was in final default on the lease. Lancelot was thereafter evicted in June, 1974. In May, 1975, CLIC notified Resort that it was invoking paragraph 12(b) of the lease insurance policy, which allowed CLIC to become a “successor in possession to the lessee in default with the right to sublet or relet the demised premises.” CLIC thereafter subleased the motel to Havasu Inns, Inc. (Havasu). Havasu was unable to successfully operate the motel. In order to mitigate its losses, CLIC took possession of the motel and operated it from July, 1978, through March, 1980. During the term of operation, CLIC upgraded a number of the motel facilities, made numerous repairs, and attempted to generate new business. Although CLIC was able to improve the financial picture of the motel, it was not able to recover the monthly policy payments it had begun making to Resort since the time of Lancelot’s default. Limited efforts by Resort to sell the motel were unsuccessful.
The inability to generate a profit from the motel was apparently caused in part, by its poor location. Although the motel was located near several golf courses, it was in a residential area that had been by-passed by the newly constructed highway. Also, it was several miles from the more popular lakes and the London Bridge. And, perhaps just as damaging, the hoped for increase in the tourist industry to view the newly acquired London Bridge did not supply enough tourists to keep up with the onslaught of new motels in the city.
Legal problems erupted between Resort and CLIC when Resort took the position that CLIC was required to fulfill all obligations of the Lancelot lease because it had taken possession of the motel as a successor in possession. Although the procedural history of this case is somewhat involved, we need discuss it only briefly. Resort originally filed a three count complaint in 1976. Count one sought a declaratory judgment that, by reason of taking possession of the motel, CLIC was required to pay not only the monthly installments required by the policy, but also insurance and taxes on the property, and abide by all of the provisions of the lease. Count two sought damages arising from count one. Count three involved a claim of waste. Count two has become moot and Resort has not appealed the court’s order directing a verdict in favor of CLIC on count three.
By way of amendments, Resort added counts four through six to the complaint. Count four centered on CLIC’s return of the motel to Resort and requested a declaratory judgment that CLIC had become a tenant under the Lancelot lease and was bound by all terms of the lease. Count five is not involved in this appeal. Count six claimed a breach of the covenant of good faith and fair dealing in connection with the return of the premises and sought punitive damages. On appeal, Resort challenges the court’s adverse rulings on counts four and five.
Resort also filed a separate complaint seeking a declaration of the party’s rights to the furniture used in the motel. That *373 complaint was consolidated with the first, and summary judgment was eventually granted CLIC on the furniture issue. Resort also appeals from the grant of summary judgment.
CLIC’S RIGHTS AND OBLIGATIONS UNDER THE LEASE
Before we reach the merits of this issue, we must first dispose of a procedural problem raised by Resort. The trial court ruled on a motion, and repeated it in its instructions to the jury and in its final judgment that during the period of CLIC’s occupancy of the motel CLIC was bound by the terms of the Lancelot lease, but was not required to stay in possession and was therefore not bound by the lease terms after tendering possession back to Resort. Resort now claims that the court’s order is law of the case and that CLIC has waived any right to object to the court’s ruling because it has not filed a cross-appeal from that order. CLIC contends that because it did in fact perform all obligations of the lease while it was in possession the court's order had no practical effect and that therefore there was no sense appealing that order. CLIC does challenge the court’s ruling by way of a cross-issue.
The approach taken by CLIC is correct. In Santanello v. Cooper, 106 Ariz. 262, 475 P.2d 246 (1970), our supreme court held that where an appellee seeks to uphold a new trial order on grounds set forth in his motion but not relied upon by the trial court, it is not necessary to cross-appeal. The court’s decision was based upon the following holding in Maricopa County v. Corporation Commission of Arizona, 79 Ariz. 307, 310, 289 P.2d 183, 185 (1955):
[Tjhat if appellee in its brief seeks only to support or defend and uphold the judgments of the lower court from which the opposing party appeals, a cross-appeal is not necessary____ If, however, it is sought by such cross-assignments to attack said judgment with a view either or (sic) enlarging his own rights thereunder or of lessening the rights of his adversary he must cross-appeal.
106 Ariz. at 265, 475 P.2d 249. CLIC seeks only to support the final judgment of the trial court and was therefore not required to file a separate cross-appeal.
With regard to the merits of this issue, the parties’ dispute concerns paragraph 12(b) of the insurance policy, entitled “minimization of Rental Losses.” That paragraph provides:
Company’s Rights — At anytime after the lessor notifies the Company by means of a notice of default or a default status report ..., that the lessee is thirty (30) days in default on a rental installment, then the Company may direct the lessor to commence appropriate action, including legal proceedings, if necessary, to obtain physical possession of the demised premises and to make all reasonable efforts to rerent said premises. The lessor shall agree to accept the Company as a successor in possession to the lessee in default with the right to sublet or relet the demised premises to a tenant of the Company’s own choosing for the unexpired term of the lease. No such sublessee or subtenant, however, shall use the premises for any purpose prohibited in the original lease, [emphasis added],
The interpretation of an insurance contract is a question of law to be determined by an appellate court independent of the trial court. Sparks v. Republic National Life Insurance Co., 132 Ariz. 529, 647 P.2d 1127 (1982); State Farm Fire and Casualty Co. v. Rossini, 107 Ariz. 561, 490 P.2d 567 (1971). On appeal, we will sustain the trial court’s ruling on any theory supported by the evidence, even though the trial court’s reasoning may differ from our own. Sparks; Minderman v. Perry, 103 Ariz. 91, 437 P.2d 407 (1968).
In construing the language of an insurance policy, as in construing the language of any other written agreement, the intent of both parties must control. Rodemich v. State Farm Mutual Automobile Insurance Co., 130 Ariz. 538, 637 P.2d 748 (App.1981); State Farm Mutual Automobile Insurance Co. v. O’Brien, 24 Ariz.App. 18, 535 P.2d 46 (1975). Where possible, the *374 party’s intent will be determined from the language of the policy. The terms of the policy are to be construed in a manner according to their plain and ordinary meaning. Sparks. Unfortunately, in the instant case the parties’ dispute concerns a clause, “successor in possession,” that does not have an ordinary, popular meaning.[1]
However, the Ninth Circuit Court of Appeals has recently decided the exact issue before us. See H.K.H. Co. v. American Mortgage Insurance Co., 685 F.2d 315 (9th Cir.1982). In H.K.H. Co. v. American Mortgage Insurance Co., D.H. Overmeyer Co. sold a warehouse to Bergin Way Associates, and then leased the property back for twenty-five years. As a condition to the lease back, Bergin Way required Overmeyer to obtain lease guaranty insurance, which they did from American Mortgage Insurance Co. As in this case, the lessee defaulted and the insurance company, AMIC took possession of the property under a clause of the insurance policy identical in all relevant respects to paragraph 12(b) of the policy in the instant case. Bergin Way subsequently sold the property to H.K.H. Company (which AMIC accepted as Bergin’s successor under the insurance policy). AMIC collected rent from various tenants who had subleased the warehouse from Overmeyer, and made payments under the policy to Bergin and H.K.H. The subleases began expiring and the warehouse virtually emptied. Although AMIC continued making the insurance payments, it refused to pay H.K.H. taxes and other expenses Overmeyer would have been required to pay under the Overmeyer lease. H. K.H. filed a complaint for breach of contract and breach of an insurer’s duty to deal fairly and in good faith. The issue on appeal, as stated by the court, was: “Under the language of the policy, did AMIC become obligated to fulfill the terms and
eonditions of the ... Overmeyer lease, including payment of expenses and taxes, when it became Overmeyer’s ‘successor in possession?’ ” Id. at 317. The court went on to find that, based upon the language of the insurance policy, the parties did not intend that AMIC would become obligated under the lease. The court’s discussion of the matter is persuasive:
A close examination of the policy compels the conclusion that the parties intended AMIC’s liability, as a successor in possession, to be no more than the guaranteed rental payment of $11,617.40 per month. This examination begins with analysis of the parties’ use of the phrase ‘successor in possession.’ The word ‘successor’ has been defined as ‘one who takes the place that another has left, and sustains the like part or character. The definition goes beyond the borders of contract assignment and is used so as to obviate the need for an express assumption of burdens.' Using this definition, the appellant argues that, by electing to become Overmeyer’s ‘successor’ AMIC assumed the benefits and the burdens of the Overmeyer lease. However, the parties modified the word ‘successor’ by the words ‘in possession.’ The inference to be drawn from this modification is that the parties intended ‘successor’ to be limited in meaning: AMIC was to take the place of the defaulting lessor only in so far as AMIC would take possession of the warehouse.
Id. at 318. (citations omitted).
The court went on to point out that its construction of the terms “successor in possession” is buttressed by the parties inclusion of the last sentence of the paragraph: “No such sublessee or subtenant, however, shall use the premises for any purpose prohibited in the original lease.” *375 We agree with the ninth circuit that this sentence would be surplusage if CLIC, as successor in possession, became bound by all lease covenants. Id. Contracts, including insurance policies should not be interpreted in a manner that render portions thereof meaningless. See Graver Tank & Manufacturing Co. v. Fluor Corporation, Ltd., 4 Ariz.App. 476, 421 P.2d 909 (1966).
Also, when the policy herein is viewed as a whole, it is clear the parties contemplated a spreading of the risk and loss, not a complete shifting thereof to CLIC. See H.K.H. Company v. American Mortgage Co. For instance, rental payments are guaranteed for only fifteen of the twenty-five years of the lease. Second, the policy’s guaranteed rental payments are less than the monthly rent required by the terms of the lease agreement. Third, the policy does not require CLIC to begin making monthly payments until the lessee is in default for a three month period. Had Resort wanted the policy to require CLIC to assume all responsibilities of a tenant under the lease, it would have been quite easy to so specify. In fact, had Resort contemplated such a complete shifting of obligations, it would make sense to do so under the terms of paragraph 12(b).
Finally, under Resort’s interpretation CLIC would not be required to assume obligations under the lease unless it voluntarily took possession of the property. In a case such as this, where an insurance company could not be certain it would make a profit or break even by taking possession, it seems doubtful it would ever do so. To accept Resort’s position would be to give the policy a nonsensical construction. This we will not do. See Sparks v. Republic National Life Insurance Co., 132 Ariz. 539, 647 P.2d 1127 (1982). We agree with the holding in H.K.H. Company v. American Mortgage Insurance Co., CLIC was obligated under the lease agreement only while it was in possession of the premises; and, it was not obligated to maintain possession.
ENTITLEMENT TO THE FURNISHINGS
Resort’s next claim of error relates to the furniture Lancelot purchased for use in the motel. Lancelot acquired the furniture, fixtures and equipment for the motel through a lease-purchase agreement with Marine Midland Leasing Corp. (Marine). To protect its interest in the property, Marine entered into a “property waiver” agreement with Resort. Under that agreement Resort waived any right or interest, by way of landlord’s lien or otherwise, it might have to the furniture. The waiver specifically allowed Marine to enter the premises and remove the furniture without any claim being made by Resort. Paragraph five of the waiver provided that it would inure to the benefit of Marine’s successors, heirs, devisees and assigns. Lancelot defaulted on the lease purchase agreement with Marine. When CLIC took possession of the motel, Marine threatened to repossess the furniture unless CLIC made the payments. CLIC thereafter purchased all of Marine’s right, title and interest in and to the furniture. When CLIC gave Resort notice it was vacating the motel, it offered to sell the furniture to Resort. Resort refused and claimed it was entitled to possession of the furniture by way of a landlord’s lien. CLIC maintained that by purchasing all right, title and interest to the furniture it became Marine’s successor in interest and was entitled to raise the waiver as a defense to any claim by Resort. At trial, the court instructed the jury that CLIC was entitled to the benefits of the waiver. We agree.
Under Arizona law, a third person can recover on a contract to which he is not a party only if the contract reveals that the parties thereto intended the contract to directly benefit the third party or a class of which the third party is a member. Johns-Manville Sales Corp. v. Reliance Insurance Co., 410 F.2d 277 (9th Cir.1969); Pioneer Plumbing Supply Co. v. Southwest Savings and Loan Association, 102 Ariz. 258, 428 P.2d 115 (1967); Irwin v. Murphey, 81 Ariz. 148, 302 P.2d 534 (1956). In the instant case, the agreement between *376 Resort and Marine specifically provided that the waiver inured to the benefit of Marine’s successors and assigns. By specifying in the Bill of Sale from Marine to CLIC that CLIC acquired all right, title and interest, the parties expressed their intent that CLIC became a successor in interest to Marine, with a right to raise the waiver agreement against Resort. It would have made no sense for CLIC to purchase the furniture without the right to claim the waiver when it so fully understood the financial condition of the parties. We will not attach a nonsensical reading to the agreement between CLIC and Marine.
We also disagree with Resort’s contention that the waiver became inoperative once Marine was paid by CLIC. Paragraph four of the waiver provides:
This agreement shall continue and remain in full force and effect until Lessor has been paid in full____
In determining the parties’ intent to an agreement, however, the entire agreement must be reviewed and construed as a whole. Newmont Exploration Ltd. v. Siskon Corp., 125 Ariz. 267, 609 P.2d 82 (App. 1980). When the waiver agreement is considered in its entirety, it is clear the parties did not intend it to become inoperative should Marine sell or assign the furniture as it did herein.
Resort also contends that the court erred by instructing the jury as follows:
I instruct you that Resort waived its furniture lien and that CLIC is entitled to the benefits of that waiver.
Resort argues that the word “benefits” is susceptible to different interpretations and therefore made the instruction confusing. We disagree. The English language is in many respects imprecise. Many of our words are susceptible to more than one definition. That does not necessarily mean that anytime such a word is used, the listener or reader will be confused. In the context of this case, we do not believe the above jury instruction was confusing to the jury. Thus, we also find the court properly denied Resort’s proposed instruction on the same issue.
Finally, Resort contends the trial court should have reviewed a letter from the attorney which had represented them when the waiver agreement was executed. That letter was attached to Resort’s motion for new trial based upon newly discovered evidence and was offered in support of its interpretation of the waiver agreement. However, as CLIC points out, the record shows that the letter was available to Resort at the time of trial. And, Resort has offered no valid reason to excuse its failure to offer the letter until after trial. Thus, the trial court could have properly concluded that the letter did not constitute newly discovered evidence. See, e.g., Ashton v. Sierrita Mining and Ranching, 21 Ariz.App. 303, 518 P.2d 1020 (1974).
MISCELLANEOUS CLAIMS OF ERROR
Resort raises a number of miscellaneous claims of error. We discuss each briefly below.
1. Waiver agreement was immaterial— Resort contends that the waiver agreement executed between itself and Marine was immaterial to the case and should not have been admitted into evidence. The waiver agreement was clearly material, however, to a resolution of the issues regarding possession of the motel furnishings.
2. Dismissal of complaint seeking imposition of lien on furniture — In light of our resolution of the issue regarding entitlement to the furniture, it follows that the court properly dismissed that part of the lawsuit seeking to impose a lien on the furniture.
3. Failure to instruct jury on punitive damages — Resort contends the trial court erred by not instructing the jury on punitive damages. Before punitive damages may be awarded, however, the evidence must support a showing of aggravated, wanton, reckless or malicious conduct. Acheson v. Shafter, 107 Ariz. 576, 490 P.2d 832 (1971). The record herein supports no such showing. Thus, the instructions on punitive damages were properly denied.
*377 However, even if the instructions should have been given, any error is harmless because the jury found for CLIC and awarded no actual damages to Resort. Continental National Bank v. Evans, 107 Ariz. 378, 489 P.2d 15 (1971).
4. Jury instruction for breach of covenant of good faith and fair dealing — Resort requested a damage instruction for CLIC’s alleged breach of its duty to deal fairly and in good faith with Resort under the terms of the insurance policy. Having already determined that CLIC did not breach its lease guaranty insurance policy and did not become a tenant under the lease, it necessarily follows that it did not breach its duty of good faith and fair dealing. See H.K.H. Company v. American Mortgage Insurance Co., supra. Thus, any error is harmless.
5. Jury instruction on duty to mitigate— Resort’s position on this issue is based upon its contention that CLIC was a breaching tenant under the lease and wrongfully removed the furniture from the motel. Resort’s position on this point fails in light of our resolution of the two issues in favor of CLIC.
6. Jury’s failure to award damages is contrary to the evidence — We have already held that CLIC was not obligated under the lease agreement and did not breach any duties under the insurance policy. It follows, therefore, they were not entitled to damages.
7. Judgment is incomplete — Resort’s main contention here is that the court did not declare the future rights of the parties. Specifically, Resort sought a declaratory judgment that CLIC could not, at some future date, again take possession of the motel under paragraph 12(b) of the insurance policy. However, a declaratory judgment will be granted only when there is a justiciable issue to be decided. Arizona State Board of Directors for Junior Colleges v. Phoenix Union High School District of Maricopa County, 102 Ariz. 69, 424 P.2d 819 (1967). Declaratory relief will be based on an existing state of facts, not those which may or may not arise in the future. Id. In the instant case, a declaration as to the future rights of the parties under paragraph 12(b) of the lease depended upon an undertain set of future facts. For that reason, the trial court properly refused to grant the requested declaratory judgment.
8. Attorney’s fees improperly awarded— Resort’s main contention here is that it should have been awarded attorney’s fees as a successful party on counts one and two. The trial court declined to award attorney’s fees on counts one and two because the parties resolved those issues by agreement before trial. Waqui v. Tanner Brothers Contracting Company, Inc., 121 Ariz. 323, 589 P.2d 1355 (1979), is dispositive of this issue. In that case it was held that where matters were stipulated to before trial neither party would be regarded as “successful” for purposes of awarding attorney’s fees on those matters.
Finally, because of our disposition of this case, we find no reason to limit CLIC’s requested attorney’s fees to the period after January 1, 1980.
We recognize that Resort has raised a number of other relatively minor issues which we have not specifically addressed. These issues have either been addressed in other parts of our opinion or were not briefed with sufficient specificity to warrant a response. See Mercantile National Life Insurance Co. v. Villalba, 18 Ariz.App. 179, 501 P.2d 20 (1972).
For all the foregoing reasons, the judgment of the trial court is hereby affirmed.
FROEB, P.J., and GRANT, J., concur.

. Lease guaranty insurance is a fairly new creation. It was first offered in the United States in 1965, by the small business administration. See generally Ford, Another View of the SB A “Lease" Guarantee Program, 25 Bus.Law. 1053 (1970); Grillo, The Small Business Administration "Lease" Guaranty Program, 24 Bus.Law. 1193 (1969). Gradually, private insurance companies began offering the same type of insurance. Because lease guaranty insurance is relatively new, there are few recorded cases discussing it. See H.K.H. Company v. American Mortgage Insurance Co., infra; Valley View Shopping Center, Ltd. v. United States, 210 Ct.Cl. 89, 535 F.2d 42 (1976); Sunshine v. M.R. Mansfield Realty, Inc., 195 Colo. 95, 575 P.2d 847 (1978).